(No. 5923.   December 17, 1932.)

STATE, Respondent, v. C. G. McDERMOTT, Appellant.

[17 Pac. (2d) 343.]

B. H. Miller, for Appellant,

Fred J. Babcock, Attorney General, and Z. Reed Millar, Assistant Attorney General, for Respondent.

VARIAN, J.—Appellant was convicted of forgery and appeals. The information charges:

"That said C. G. McDermott, on or about the 27th day of June 1931, at the County of Bonneville and State of Idaho, and prior to the filing of this information, Committed a Felony, to-wit: Forgery, Committed as follows, to-wit: Did then and there unlawfully, feloniously, knowingly, falsely and fraudulently, and with intent to prejudice, damage and defraud the Corey Implement Company, make, alter, forge and counterfeit a certain instrument in writing, in the words and figures following, to-wit:

" 'Corey Implement Company.     No. 8106.
" 'Idaho Falls, Idaho, 6–27–1931.
" 'Pay to the order of Roy Johnson..............$50.00.
—Only Fifty ................................Dollars.
" 'Anderson Bros. Bank
" 'Idaho Falls, Idaho.
" 'COREY IMPLEMENT CO.
" 'By I. N. COREY.'

"And he, the said C. G. McDermott, then and there well knowing the same to be false, altered, forged and counterfeited, did then and there, to-wit: on the 27th day of June 1931, at the City of Idaho Falls, County of Bonneville, State of Idaho, wilfully and unlawfully, feloniously and fraudulently, and with intent to prejudice, damage, and defraud the said Corey Implement Company, utter, pub-

lish, and pass the same as genuine and true to the Goodrich Silver Towns, Inc.''

Reference will be made to the record where necessary in discussing the various errors complained of.

It is first contended by appellant that any departure from the state by the probate judge *"ipso facto* works a forfeiture and creates a vacancy in office." He argues that the committing magistrate in the instant case, therefore, was not probate judge *de jure,* although he admits that he was a *de facto* officer, at the time of the preliminary examination and commitment; that having promptly challenged the magistrate's right to hold the preliminary hearing, at its inception and throughout the trial, appellant has not had a preliminary hearing and commitment, contemplated by sec. 8 of art. I of the state Constitution; and that there being no proper commitment there was no jurisdiction to file the information or try the appellant. Under the facts appearing in the record the probate judge, the committing magistrate, qualified for the office by taking the oath and furnishing bond, and afterwards sought and obtained leave from the board of county commissioners to absent himself, left, and was gone from the state for five weeks. On his return he resumed the duties of his office without again qualifying therefor. The fundamental question here is, Did such absence of the incumbent from the state create a vacancy in the office of probate judge?

I. C. A., sec. 57–901 (C. S., sec. 453) : ''Every civil office shall be vacant upon the happening of either of the following events at any time before the expiration of the term of such office, as follows:

''1. The resignation of the incumbent.

''2. His death.

''3. His removal from office.

''4. The decision of a competent tribunal declaring his office vacant.

''5. His ceasing to be a resident of the state, district or county in which the duties of his office are to be exercised, or for which he may have been elected.

"6. A failure to elect at the proper election, there being no incumbent to continue in office until his successor is elected and qualified, nor other provisions relating thereto.

"7. A forfeiture of office as provided by any law of the state.

"8. Conviction of any infamous crime, or of any public offense involving the violation of his oath of office.

"9. The acceptance of a commission to any military office, either in the militia of this state, or in the service of the United States, which requires the incumbent in the civil office to exercise his military duties out of the state for a period of not less than sixty days."

I. C. A., sec. 30–1513 (C. S., sec. 3555) : "No county officer must absent himself from the state for more than twenty days unless with the consent of the board of county commissioners."

I. C. A., sec. 30–745 (C. S., sec. 3454) : "The board of commissioners may grant to any county officer of their respective counties (except the probate judge of such county) leave of absence from their county and the state, for a period not exceeding ninety days, during which time the absence of such officer does not work forfeiture of his office; provided, that before the granting of such leave of absence, the officer (except county commissioners) must appoint a deputy to perform the duties of his office, as by statute in such cases made and provided, and must present to, and file with, the board of commissioners of his county the written consent of each person liable on his official bond, that such leave of absence be granted: be it further provided, that no leave of absence shall be granted to more than any one county commissioner at the same time."

The probate judge is a county officer (I. C. A., sec. 30–1501; C. S., sec. 3543) ; he must reside (I. C. A., sec. 30–1512; C. S., sec. 3554, as amended Sess. Laws 1929, chap. 92, p. 149), and must keep his office at the county seat, establishing rules and hours necessary for the dispatch of official business (I. C. A., sec. 30–1509; C. S.,

sec. 3551). He was therefore legally authorized to absent himself from the state for twenty days (I. C. A., sec. 30–1513; C. S., sec. 3555) without consent of anyone. But the board of county commissioners were acting without authority in granting him a leave of absence (I. C. A., sec. 30–745; C. S., sec. 3454), and said order was void, being contrary to an express statute. (*Fremont County v. Brandon*, 6 Ida. 482, 56 Pac. 264.) The most that can be said is that the probate judge overstayed the leave of absence granted him by the statute by about two weeks. Remaining without the state during his term of office beyond the twenty days allowed is not one of the happenings under I. C. A., sec. 57–901 (C. S., sec. 453) that would *ipso facto* cause a vacancy in his office, nor is there any provision of our statutes to be found elsewhere whereby his absence under such circumstances constitutes a vacancy in his office, or even grounds for his removal therefrom.

Where the statute expressly requires the officer to reside within the county he represents (I. C. A., sec. 30–1512; C. S., sec. 3554, as amended, *supra*), he may abandon his office by permanently removing from said county and, *ipso facto,* a vacancy is created in the office. (Mechem on Public Officers, sec. 438, p. 280; Throop on Public Officers, sec. 425, p. 413; *Hampton v. Dilley*, 3 Ida. 427, 31 Pac. 807; *State v. Harmon*, 115 Me. 268, 98 Atl. 804; *Parks v. Ash,* 168 Ga. 868, 149 S. E. 207.)

"In order to constitute an abandonment of an office, it must be total, and under such circumstances as clearly to indicate an absolute relinquishment, the determination of the question whether an officer has abandoned an office is dependent upon his overt acts rather than upon his declared intention, and the law will infer a relinquishment where the conduct of the officer indicates that he has completely abandoned the duties of the office." (46 C. J. 981; *Parks v. Ash, supra.*)

If an office is abandoned the effect of the abandonment is not removed by the officer's return and reoccupation of the office. (Mechem on Public Officers, sec. 440, p. 281;

Throop on Public Officers, sec. 425, p. 414; *Relender v. State*, 149 Ind. 283, 49 N. E. 30; *State v. Moores*, 52 Neb. 634, 72 N. W. 1056; see *Maddox v. York*, 21 Tex. Civ. App. 622, 54 S. W. 24.) However, a mere temporary removal, without intention to make a permanent change of residence, or surrender or abandon the office, or to cease to perform its duties, does not affect the tenure of the office. (Mechem on Public Officers, sec. 438, p. 280; Throop on Public Officers, sec. 425, p. 413; 46 C. J. 981; *State v. Board of Education*, 108 Kan. 101, 193 Pac. 1074; *Steingruber v. City of San Antonio*, (Tex. Com. App.) 220 S. W. 77.) And neglect or official misconduct, while constituting "just grounds of forfeiture of the office, does not produce a vacancy until it has been judicially determined and declared that the incumbent is guilty thereof and that he has thereby forfeited his right to continue in the office." (33 C. J. 948; 46 C. J. 982; *State v. Harmon, supra.*)

The record before us wholly fails to disclose any intention on the part of Mr. Huffaker to abandon his office of probate judge, or that it has been judicially determined that he has forfeited his right to said office. On the contrary, it appears from his acts that he intended to keep his office and sought and obtained a leave of absence from the county commissioners, unauthorized in law to be sure, but throwing light upon his intentions as to abandoning his office. If it could be said that the office was neglected during the time the probate judge was out of the state over twenty days, there is no proof that it was, and no judicial determination of forfeiture of his right to hold office.

Appellant cites the California case of *People v. Shorb*, 100 Cal. 537, 35 Pac. 163, 38 Am. St. 310, construing sec. 996 of the California Political Code (corresponding to I. C. A., sec. 57–901; C. S., sec. 453) as supporting his contention. The case is not in point for the reason that the California statute contains (P. C., sec. 996, *supra*) the following:

"An office becomes vacant on the happening of either of the following events before the expiration of the term: . . . .

"6. His (the incumbent's) absence from the state without permission of the legislature beyond the period allowed by law."

not found in the Idaho Code. A contemporaneous statute (P. C., sec. 4120) reads:

"A county officer shall in no case absent himself from the state for a period of more than sixty days, and for no period without the consent of the board of supervisors of his county."

The right to hold the office was challenged for a violation of said paragraph 6 and the record showed in effect that the county treasurer had absented himself from the state without consent of the legislature or board of supervisors for a longer period than sixty days. It was held that by reason of the statutes above quoted his office became vacant, *ipso facto*, on his leaving the state, the court saying:

"The ten events mentioned in section 996 are merely conditions, upon the occurrence of any one of which the legislature has declared the office shall become vacant, not as a penalty or forfeiture, but simply as the legal effect of the happening of any one of the events mentioned. It is true that the occurrences of some of these events are conclusively established against the incumbent of the office by the finding or judgment of a competent tribunal, namely, his insanity, his removal from office, his conviction of a felony, and the invalidity of his election."

The Shorb case has been cited, and the rule followed, in the following cases where like statutes were under consideration: *McCluskey v. Hunter*, 33 Ariz. 513, 266 Pac. 18; *State v. Fousek*, 91 Mont. 448, 8 Pac. (2d) 791; see *People v. Espinoza*, 81 Colo. 198, 254 Pac. 778.

I. C. A., sec. 57–901 (C. S., sec. 453), does not impose the condition (Cal. P. C., sec. 996, par. 6, *supra*) that a county office *becomes vacant* if the officer absents himself from the state for any period. We hold that, at the time of the preliminary examination, W. D. Huffaker was probate

judge, *de jure*, of Bonneville county, Idaho, duly elected, qualified and acting as such.

■ The preliminary complaint before the magistrate charged the making of a forged check. The depositions established that a false check was "uttered" and there was probable cause to believe that appellant uttered the check. The magistrate's order of commitment read, in part, as follows:

"It appearing that the offense in the within depositions and complaint mentioned, to-wit, the offense of Felony, to-wit: Forgery, in the above entitled case, has been committed, and that there is sufficient cause to believe the within named C. G. McDermott guilty thereof, I order that he be held to answer the same, to-wit, said charge of Felony, to-wit: Forgery, etc."

The information charged forgery by making a forged check and by uttering the same. It is contended that the information charges an additional offense than that set forth in the commitment. The statute declares that

"Every person who, with intent to defraud another, falsely makes, alters, forges or counterfeits, any charter, . . . . check, . . . . or utters, publishes, passes, or attempts to pass, as true and genuine any of the above named false, altered, forged, or counterfeited matters, . . . . knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person; etc."

is guilty of forgery. (I. C. A., sec. 17–3701; C. S., sec. 8408.) It is true that the information must only charge the offense for which the defendant was committed. (*State v. McGreevey*, 17 Ida. 453, 105 Pac. 1047.) Forgery is a felony and the commitment so describes it, and holds appellant to answer the charge of forgery without saying in what manner the offense was committed—by making a false or counterfeit instrument, or by passing or uttering the same—except that it refers to it as forgery, the offense mentioned in the "within depositions and complaint."

■ "The description of the offense by its generic name, if it has one, whether the offense is statutory or one

known to the common law, states by reasonable inference all the facts requisite to such offense." (16 C. J. 336; *State v. Gardner,* 21 Ariz. 602, 193 Pac. 22; *People v. Bianchino,* 5 Cal. App. 633, 91 Pac. 112; *People v. Gregory,* 8 Cal. App. 738, 97 Pac. 912.) Without regard to the offense charged in the complaint before the committing magistrate, the commitment may hold the accused to answer any offense disclosed by the preliminary examination. (*State v. Frank,* 51 Ida. 21, 1 Pac. (2d) 181; *State v. Montgomery,* 48 Ida. 760, 285 Pac. 467.) The order of commitment was legally sufficient.

By demurrer and appropriate motions, timely interposed, appellant challenged the information as stating two offenses. I. C. A., sec. 19–1313 (C. S., sec. 8829), provides that the information must charge but a single offense and when the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count. The information charges a single offense, i. e., forgery, committed in two ways, each of which constitutes the crime. (I. C. A., 17–3701; C. S., sec. 8408.)

"It is a generally recognized rule of criminal pleading that, when an offense against a criminal statute may be committed in one or more of several ways specified by the statute, the indictment may in a single count charge the commission of the offense in any or all of the ways specified by the statute; and, when a statute mentions several acts disjunctively and prescribes that each act shall constitute the same offense and be subject to the same punishment, an indictment may charge any or all of such acts conjunctively, as a single offense. But the rule does not apply when repugnancy results from charging the acts conjunctively; nor does the rule apply where the acts are distinct and are performed at different times and do not constitute component parts of one transaction." (*State v. Laundy,* 103 Or. 443, 204 Pac. 958, 966, 206 Pac. 290; *State v. Brown,* 36 Ida. 272, 275, 211 Pac. 60; *State v. Farnsworth,* 51 Ida. 768, 10 Pac. (2d) 295; *State v. Hagan,* 47 Ida. 315, 319, 274 Pac. 628; *State v. Alvord,* 46 Ida. 765,

769, 271 Pac. 322.) "Making" and "uttering" a forged instrument, in this case, are not repugnant, and constitute component parts of the same transaction. It is generally held, under similar statutes, that an information or indictment is not duplicitous in charging both making and uttering of a forged instrument. (*State v. Rowen*, 104 Or. 1, 200 Pac. 901; *People v. McGlade*, 139 Cal. 66, 72 Pac. 600; *State v. McGuff*, 104 Wash. 501, 177 Pac. 316; *Bruner v. State*, 201 Ind. 33, 164 N. E. 272.) The court did not err in denying appellant's motion to require the prosecution to elect.

Nor is it necessary that the information charge that the defendant forged the name of the person whose signature purports to be signed to the instrument. "The allegation that the instrument was forged shows that every part of such document is false, and not true and genuine." (*State v. Rowen, supra; State v. McGlade, supra;* 26 C. J. 931.) Appellant cites *State v. Burtenshaw*, 25 Ida. 607, 138 Pac. 1105, as sustaining the contrary rule. We do not so interpret that case. There the instrument alleged to be forged was an affidavit in an insanity inquisition, purporting to be signed by one Nels Hansen, and containing the seal, signature and jurat of the probate judge. This court said:

"The forgery in the case at bar, if forgery was committed, must have consisted in wrongfully and unlawfully signing the name of either the affiant to the affidavit, or the name of the officer who is represented as having administered the oath and attached his jurat. Again, in a case like this, it would be necessary for the information in some way to charge or disclose the name or identity of the person or persons whom it was intended by affidavit to defraud, or in some way disclose the manner in which the injury, fraud or wrong was intended to be effected or accomplished."

The rule announced would not apply in the case of a check, because on its face it is apparent that the maker, under some authorities (*State v. Cleavland*, 6 Nev. 181), would be injured or prejudiced. In the case of the affi-

davit in the Burtenshaw case it does not appear on the face thereof who might be injured or prejudiced.

Over objection, the prosecution was permitted to show that appellant indorsed the name "Roy Johnson," the name written as payee in the body of the forged check, just before he cashed it. This is assigned as error. The evidence was admissible as showing a necessary preliminary step in the uttering of the forged instrument and as tending to show guilty knowledge and intent to defraud; the name indorsed being the payee named and not being the name of appellant. (See *People v. McDonald*, 53 Colo. 265, 125 Pac. 114; *State v. Stickler*, 90 Kan. 783, 136 Pac. 329; *State v. Mitton*, 37 Mont. 366, 96 Pac. 926, 127 Am. St. 732.)

After appellant was taken into custody he made certain statements to the sheriff and other witnesses present and at the request of the sheriff wrote certain figures and names on blank sheets of paper. Over objection that they were not voluntarily made, these admissions and writings (as exemplars) were admitted in evidence. The record shows that the admissions and writings were voluntarily given, without coercion, promise of immunity, or offer of reward. However, the rule as to confessions does not apply and it was not necessary to warn appellant before making them that they would be used against him. (*State v. Garney*, 45 Ida. 768, 774, 265 Pac. 668; *State v. Wilson*, 51 Ida. 659, 9 Pac. (2d) 497.) Admissions are admissible as original evidence and it was not necessary to lay the foundation as for impeaching questions. (16 C. J. 626; *State v. Garney*, supra.)

The refusal to give the advisory instruction to acquit, requested by appellant, is assigned as error. Such refusal is not reviewable on appeal. (*State v. Miller*, ante, p. 33, 10 Pac. (2d) 955, 957; *State v. McClurg*, 50 Ida. 762, 300 Pac. 898; *State v. Stevens*, 48 Ida. 335, 282 Pac. 93.)

The information charged the uttering with intent to "prejudice, damage, and defraud" the Corey Implement

Company. The court, in instruction No. 5, instructed the jury in the language of I. C. A., sec. 17–102 (C. S., sec. 8075), as to one of the elements constituting forgery by uttering, that in order to convict they must find that appellant "passed, or attempted to pass" the check "with intent to prejudice, damage or defraud some person." It was not necessary to allege any particular person as having been injured or defrauded, that being a matter of evidence. The only effect of naming the Corey Implement Co. as the one intended to be defrauded was to confine the prosecution, in its proof of intent to defraud, to the Corey Implement Co. (*State v. Lurch*, 12 Or. 104, 6 Pac. 411.) I. C. A., sec. 19–1315 (C. S., sec. 8831) reads:

"When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured is not material."

We conclude that since the allegation of the intent to defraud the Corey Implement Co. is not material, under all the circumstances of this case, it was not error to instruct in the language of I. C. A., sec. 17–102 (C. S., sec. 8075). (See *State v. Cleavland, supra.*) Again, the verdict of the jury was that they found the defendant guilty "as charged in the information." If they found that he either forged or uttered the check in question "with intent to prejudice, damage or defraud" the Corey Implement Co., there is ample evidence to sustain the verdict and appellant is not injured.

Under the statute (I. C. A., sec. 17–3701; C. S., sec. 8408) either the making, or uttering, a forged instrument is a crime, there being no degrees thereof. The crime consists in doing one, or more than one of the acts set forth in the statute (I. C. A., sec. 17–3701; C. S., sec. 8408) as constituting forgery and a general verdict, finding defendant guilty as charged in the information, is not insufficient because it fails to show of what particular acts constituting said crime defendant was guilty. (16 C. J.

1109; *People v. Barnnovich,* 16 Cal. App. 427, 117 Pac. 572; *State v. Moser,* 94 Wash. 465, 162 Pac. 582.)

Judgment affirmed.

Lee, C. J., Givens, J., and Koelsch, D. J., concur.

Mr. Justice Leeper did not participate.

Petition for rehearing denied.