(No. 6059. November 25, 1933.)

STATE, Respondent, v. CLINT ALLEN, Appellant.

[27 Pac. (2d) 482.]

Charles F. Reddoch, for Appellant.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for the State.

HOLDEN, J.—E. E. Evans and Sadie Evans conducted a rooming-house at Caldwell, Idaho. February 24, 1933, appellant rented a room from them for a period of three weeks, under the name of Tom Moore, for three dollars per week. Sunday, February 26, 1933, he presented a check to E. E. Evans, for the sum of fifteen dollars, drawn on the First National Bank of Caldwell, apparently signed by Lee Chess, and made payable to Tom Moore. At the time the check was presented to Evans, appellant indorsed the name of ''Tom More'' on the back of the instrument, and paid for three weeks' room rent, and Sadie Evans gave him six dollars in cash. At the time the check was cashed appellant stated that his name was Tom Moore, and that he received it from a sheep man for whom he had been working on the upper end of Reynolds Creek, and that the check was not payment in full, and that he needed a little money. Having his left arm in a sling, appellant placed the check on a table and Evans held the check down while appellant indorsed it. It appears from the record that appellant's true name is Clint Allen, and not either Tom More or Tom Moore. He was not seen again by the Evans after the check was cashed, until the morning of the trial, July 7, 1933.

The bank upon which the check was drawn had no account, and never had had, under the name of ''Chess.''

Clarence Chess testified substantially as follows: That appellant was his brother-in-law; that he had known him for twenty-five years, but that he had hardly known him for about twenty years; that he last saw him in December, 1931; that he knew a man named Lee Chess and that he was a third cousin; that Lee Chess lived at Appalachia, Virginia; that it had been twenty-five years since he last saw him, and that he did not know where he lived at the present time; that he had two brothers living in the state of Idaho; that the three brothers, himself, Ben and Jess Chess, were

the only men of that name he knew in the state; that he never had had an account in said bank.

Harold Meyer, deputy sheriff of Canyon county, testified substantially as follows: That appellant told him he got the check from a man named Chess who lived on Snake River and for whom he had worked; that he asked Allen "if he would assist us or go with us to locate this man Chess, and he said he didn't think he could find the place any more"; that upon request Allen wrote the names "Tom More" and "Lee Chess" on a piece of paper; that Allen also told him he got the check for giving a man three gallons of liquor and that he would rather take a jolt than to squeal on this man because he had a family; that he asked Allen "how it happened he used Tom Moore and he said that was as good a name as any"; that "we just asked him (Allen) if he used the name Lee Chess and he said he had."

May 29, 1933, an information was filed against Allen, the charging part of which reads as follows:

"That said Clint Allen on or about the 26th day of February A. D. Nineteen Hundred and Thirty three at the County of Canyon, in the State of Idaho, then and there being and prior to the filing of this Information did then and there wilfully, unlawfully, knowingly, feloniously and fraudulently and with intent to prejudice, damage and defraud, Sadie Evans and E. E. Evans of Caldwell, Canyon County, Idaho, make and pass as true and genuine a certain instrument in writing in words and figures as follows, to-wit:

Caldwell, Idaho, 2/26 1933 No. ——

First National Bank of Caldwell, Idaho 92-50 12
Pay to the
Order of Tom Moore $15*00*
Fifteen & no/100—Dollars.

LEE CHESS.

(Counter check, endorsed on back—Tom More.)
and he the said Clint Allen, then and there well knowing the same to be false, altered and counterfeit, did then and there on or about the 26 day of February, 1933, at Cald-

well, Canyon County, Idaho, wilfully, unlawfully, falsely and fraudulently and with intent to damage and defraud Sadie Evens and E. E. Evans, did utter, publish and pass the same as true genuine to Sadie Evans and E. E. Evans.''

The action was tried by the court, sitting with a jury. Appellant was convicted and judgment entered sentencing him to the penitentiary for the crime of forgery, from which judgment he appeals.

The specification of alleged errors upon which appellant relies for a reversal of the judgment of the trial court presents five principal grounds:

1. That the information is drawn under section 17-3701, I. C. A., that the proof is responsive to a charge under section 17-3706, I. C. A., and that a conviction cannot be upheld for the reason that section 17-3701, I. C. A., is not broad enough to nor does it include the matters embraced in section 17-3706, I. C. A.

2. That there is no evidence showing that the check set forth in the information was forged.

3. That there is no evidence showing that appellant passed the check knowing it to be forged with intent to defraud any person whomsoever.

4. That the inconsistent statements of the appellant are insufficient to sustain a conviction.

5. That if the name of Lee Chess was signed to the check by someone other than Lee Chess, there is no evidence showing that such other person was not authorized by Lee Chess to so sign the check.

It is contended by appellant, in support of the first ground above set forth, that where a fictitious name is signed to a check, and the check passed as that of an existing person, the person signing the fictitious name to and passing any such check must be prosecuted under section 17-3706, I. C. A., because section 17-3701, I. C. A., is not broad enough to include the offense of making and passing fictitious checks. This contention lacks merit for the reason that and as stated and admitted by appellant (a) the information in the case at bar was drawn under section 17-3701, I. C. A.,

and, therefore, not under section 17–3706, I. C. A., and that (b) while section 8414, C. S., formerly (which appellant must have had in mind) made the making and passing of a fictitious check punishable by "imprisonment in the state prison for not less than one nor more than fourteen years," and did not expressly constitute such an act the crime of forgery, the 1931 session of the legislature amended section 8414, omitting "is punishable by imprisonment in the state prison for not less than one nor more than fourteen years" and substituted therefor: "is guilty of forgery and punishable as provided by section 8411," C. S., now section 17–3704, I. C. A. So that since the amendment of section 8414, C. S., now section 17–3706, I. C. A., any and all of the acts mentioned in section 17–3706, as well as any and all of the acts mentioned in section 17–3701, I. C. A., constitute forgery.

The second ground above stated presents the question as to the sufficiency of the evidence to prove the *corpus delicti*.

It was testified, and not contradicted, that appellant wrote on a piece of paper the names "Tom More" and "Lee Chess," which paper was offered and admitted in evidence. In the early history of the common law an exemplar could not be used as a standard of comparison.

However, if there were other writings admitted to be genuine, already in evidence, for other purposes in the case, comparison could be made between any such writings and the writing in dispute. The reason for the common-law rule was that to permit the admission and use of writings, other than those admitted to be genuine, and already in evidence in the case for other purposes, might result in multiplying collateral issues, and that there was danger of fraud or unfairness in selecting instruments for the purpose, from the fact that handwriting is not always the same, and is affected by age, and by various circumstances which might attend the writing. In 1854, the British Parliament passed "The Common Law Procedure Act," 17 and 18 Victoria, chapter 125, and since the enactment of that statute any writing proved

to be genuine to the satisfaction of the presiding judge is admissible in the English courts and can be used as a standard of comparison. And by act of Congress March 13, 1913, comparison of handwriting is permitted in the federal courts.

The first time this question was passed upon in this state was in December, 1900 (before the enactment of a statute on the subject), in the case of *Bane v. Gwinn,* 7. Ida. 439, 447, 63 Pac. 634, in which case this court held that, in an action involving the genuineness of a signature, only such papers as are admitted in evidence in the case for other purposes, or such as were admitted to be genuine, should, except in very exceptional cases, be admitted for the purpose of comparison.

In *State v. Seymour,* 10 Ida. 699, 79 Pac. 825, this court again passed upon this question and held that the admission in evidence of papers irrelevant to the record for the sole purpose of creating a standard of comparison of handwriting should not be allowed except in cases where the papers are conceded to be genuine, or are such as the opposing party is estopped to deny or fall within some equally well-recognized exception.

In 1915 (Sess. Laws 1915, p. 335) the legislature added sec. 6000 to chap. 4, title 1, part 4, of the Code of Civil Procedure of this state (now sec. 16–412, I. C. A.), which reads as follows:

"Whenever the genuineness of a writing is at issue, any writing admitted or proved to be genuine is competent evidence as an exemplar for the purpose of comparison with the disputed writing, provided that such writing, so admitted or proved to be genuine shall in no way refer or relate to any matter then in issue."

That statute abrogated the said common-law rule in the state of Idaho, since the enactment of which any writing either admitted or proved to be genuine is competent evidence and admissible as an exemplar for the purpose of comparison with a disputed writing. Many states have

passed similar statutes. (See *Estate of Fisher*, 47 Ida. 668, 279 Pac. 291; *State v. McDermott*, 52 Ida. 602, 17 Pac. (2d) 343.)

The jury must have found, upon a comparison of the exemplar with the signature on the check, in connection with all the other facts and circumstances shown by the evidence, that appellant signed the name of "Lee Chess" to the check in question, because the jury found appellant guilty. And the finding of the jury that appellant signed the name of "Lee Chess" to the check has sufficient support in the evidence.

Briefly stated, the material facts of this case are: That the check was dated and cashed on the same day, Sunday, February 26, 1933; that it was made payable to "Tom Moore"; that appellant when cashing the check indorsed the name "Tom More" on the reverse side; that neither "Tom More" nor "Tom Moore" is the true name of the appellant; that the check was both dated and cashed on a Sunday when the bank upon which it was drawn would be closed, thus preventing inquiry at the bank, by phone or otherwise, as to whether there were or were not sufficient funds in the bank to the credit of "Lee Chess" to pay the check; that no one named "Chess" had ever had an account with the bank; that appellant rented, and with the check paid for, a room for three weeks, and obtained six dollars in cash; that the man whose name was signed to the check, Lee Chess, was never actually known to have lived anywhere but in Appalachia, Virginia, hundreds of miles distant from Caldwell; that the only persons known to be living in the state of Idaho by the name of "Chess" were Clarence Chess, Ben Chess and Jess Chess, relatives of Lee Chess; that Clarence Chess last saw Lee Chess at Appalachia, Virginia, about twenty-five years before the trial.

The respondent having shown that appellant himself signed the check, and that he was in possession of and cashed it on the day it was issued, and that he was claiming the title to and ownership of the check, makes applicable the rule that one who is recently in the possession of and attempts to sell

or obtain money on a forged note is presumed to have forged the same, and unless such possession, or forgery, is satisfactorily explained, the presumption becomes conclusive. (*State v. Williams*, 152 Mo. 115, 53 S. W. 424, 75 Am. St. 441, 446. See, also, the well-considered case of *State v. Earley*, 119 Kan. 446, 239 Pac. 981; 26 C. J. 961.)

 And while the inconsistent statements of the appellant are not in and of themselves sufficient to establish the *corpus delicti*, they may be considered in connection with all the other facts and circumstances in the case, in determining whether the *corpus delicti* is sufficiently proved. (16 C. J., sec. 1579.) However, the *corpus delicti* is sufficiently established in the case at bar without the aid of the contradictory and inconsistent statements of appellant.

We conclude that the evidence sufficiently proves that appellant signed the name of Lee Chess to the check in question without authority to do so; that appellant signed the name of Lee Chess to the check knowingly and with intent to and that he actually did defraud the Evans, and that there is no merit in the remaining grounds upon which he relies to reverse the judgment.

Judgment affirmed.

Budge, C. J., and Givens, Morgan and Wernette, JJ., concur.