208 P.2d 161

## STATE v. BALDWIN.
### No. 7479.

Supreme Court of Idaho.
July 5, 1949.

462

and Earle W. Morgan, Pros. Atty., Lewiston, for respondent.

Paul C. Keeton, Leo McCarty, Lewiston, for appellant.

Robert E. Smylie, Atty. Gen., John R. Smead, Asst. Atty. Gen., both of Boise,

TAYLOR, Justice.

On November 27, 1946, at Lewiston, Idaho, appellant signed and delivered a check for the sum of $53.00, drawn on the Bank of Orofino, Orofino, Idaho, and payable to Peterson Furriers. The appellant in signing the check used the name, "Tom Jackson." On the same day appellant opened a bank account at the Bank of Orofino under the name of Thomas Baldwin by making a deposit of $1.00. The Peterson Furriers is a retail establishment at Lewiston, Idaho, operated by Mr. and Mrs. J. F. Peterson. The appellant had been in the Peterson establishment a day

or two before the making of the check and talked to Mr. Peterson, advising him that he desired to purchase a fur coat for his girl, and looked at a number of coats. On the 27th he returned and, after again talking to Mr. Peterson and looking at the coats, decided upon the purchase of a coat priced at $300.00 and then asked and obtained Mr. Peterson's consent to making a down payment of $50.00 (plus $3.00, apparently for insurance) and to take the coat out and pay the balance in installments. A sales slip was prepared by Mr. Peterson showing the sale and reciting the terms in brief, which was signed by Mr. Peterson and also signed by the appellant, again using the name, "Tom Jackson." The appellant departed with the coat and made no further payments. Appellant was arrested in Walla Walla, Washington, July 13, 1947, where he signed a waiver of extradition, and was returned to Lewiston and there charged with forgery, in the making and uttering of the check, and subsequently tried and convicted.

When the case was called for trial, the prosecuting attorney moved to strike the name of the sheriff of the county from the list of witnesses appearing on the information. The motion was resisted by the defense and granted by the court. By subpoena the sheriff was then summoned as a witness for the defense. Upon impaneling the jury, the regular panel being exhausted, the court directed the sheriff to summon a special venire. When this venire was returned, the appellant orally moved to quash the panel on the ground that the veniremen had been summoned by the sheriff, who was a witness in the case. This motion the court denied and appellant assigns error. By the terms of section 19-2010, I.C., the panel may be challenged on account of any bias of the officer who summoned them on any ground which would be good ground of challenge to a juror. And, under the provisions of section 19-2020, subsection 6, a juror is disqualified if he is "a witness for the prosecution, or subpoenaed as such." Section 19-2006 provides that the challenge to the panel "must be in writing." Appellant's challenge was not in writing as required by this section. State v. Scoble, 28 Idaho 721, 155 P. 969; State v. Conner, 59 Idaho 695, 89 P.2d 197. State v. Shaw, Idaho, 207 P.2d 540. The sheriff was not a witness for the prosecution or subpoenaed as such. Although he was called to the witness stand by the defendant, he knew nothing of the pertinent facts and had taken no part in investigating or procuring evidence. Two of his deputies, who did actively participate in the investigation, were called and testified as witnesses for the state. When the sheriff, himself, is disqualified, his deputies are disqualified. State v. Barber, 13 Idaho 65, 88 P. 418; People v. Le Doux, 155 Cal. 535, 102 P. 517; People v. Vasquez, 9 Cal.App.2d 982, 99 P. 982; Lyde v. State, 21 Okl.Cr. 426, 209 P. 226. But the fact that the sheriff's deputy or deputies may be disqualified, does

not of itself disqualify the sheriff. State v. Le Doux, supra; State v. Salter, Mo. App. 256 S.W. 1068; People v. Swanson, Cal.App., 75 P.2d 623.

■ Appellant's second assignment brings up the refusal of the trial court to give requested instructions Nos. 1, 6, 7, 8 and 9. Request No. 1 is as follows:

"The burden of proof is upon the State to prove beyond all reasonable doubt the following elements of the crime of forgery: 1, that the defendant forged or counterfeited the seal and handwriting of another; 2, that he did so knowing the same to be forgery or counterfeit, with intent to defraud another; and 3, that he uttered, published or passed, or attempted to pass as true and genuine such forged or counterfeit check.

"I therefore instruct you that if the State fails to prove beyond a reasonable doubt any one or all of the foregoing elements of the crime of forgery, you must find the defendant not guilty."

This is not a correct statement of the law. Sections 18-3601 and 18-3606, I.C., defining forgery, set forth a great many acts and means by which the crime may be committed. The commission of any one of the proscribed acts, with the intent to defraud, is sufficient. State v. McDermott, 52 Idaho 602, 17 P.2d 343; State v. Allen, 53 Idaho 737, 27 P.2d 482. It is obvious that the commission of the crime of forgery cannot be limited to cases requiring "that the defendant forged or counterfeited the seal and handwriting of another." Further, the crime is committed by making, altering, etc., with the necessary intent as well as by uttering, publishing, passing, etc., with intent. If the prosecution proves the commission of the offense by either of these means, it is sufficient. The state is not required to prove both, as was requested by the appellant. State v. McDermott, supra.

Appellant's request No. 6 sought an instruction on circumstantial evidence. His assignment in this respect is not argued, and the state's case, not being based upon circumstantial evidence, the point will not be further considered.

■ Request No. 7 is as follows:

"You are instructed that in every crime or public offense there must be a union, or joint operation, of act and intent, or criminal negligence.

"If you find that there did not exist a joint operation of act and intent on the part of the accused, you are instructed to acquit him."

The first paragraph is substantially the language of the statute, section 18-114, I. C., and is and should be generally given. In cases where the statute defining the offense does not require any specific intent, the commission of the act wilfully and knowingly is sufficient. State v. Browne, 4 Idaho 723, 44 P. 552; State v. Keller, 8 Idaho 699, 70 P. 1051; State v. Henzell, 17 Idaho 725, 107 P. 67, 27 L.R.A.,N.S.,

159; In re Baugh, 30 Idaho 387, 164 P. 529; State v. Omaechevviaria, 27 Idaho 797, 152 P. 280; State v. Sheehan, 33 Idaho 103, 190 P. 71; State v. Johnson, 39 Idaho 440, 227 P. 1052; State v. Sterrett, 35 Idaho 580, 207 P. 1071. In cases where specific intent is a part of the statutory definition of the crime, such as forgery, the intent must be alleged and proved. State v. Swensen, 13 Idaho 1, 81 P. 379, 37 C.J.S., Forgery, § 3, p. 34, 23 Am.Jur. 688. In this case the information charged that the appellant made the check "with intent to defraud" and that he uttered the check "with intent to defraud." The complete charge as contained in the information was given to the jury by the court and, in its instruction No. 2, the court gave a part of the statute defining forgery as follows:

"Every person who, *with intent to defraud another*, falsely makes, alters, forges or counterfeits any check * * * or who counterfeits or forges the seal or handwriting of another, or utters, publishes, passes or attempts to pass as true and genuine any such false, altered, forged or counterfeited check, *knowing the same to be false, altered, forged or counterfeited, with intent to prejudice, damage or defraud any person*, is guilty of forgery." (Emphasis added.)

In its instruction No. 3, the court informed the jury that "it is incumbent on the State to prove *every material allegation of the Information* to be true be-

yond a reasonable doubt, or else you should acquit the defendant." (Emphasis added.)

Appellant's No. 8 was a request for an instruction substantially in the language of section 18-116, I.C. In its instruction No. 8, the court gave the exact language of that section, as follows:

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, *or intent is a necessary element* to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the *purpose, motive or intent with which he committed the act.*" (Emphasis added.)

It is apparent from the instructions given that the jury was sufficiently advised that the intent to defraud is a necessary element of the crime charged, and, as such, that the existence of that intent must be established by the state beyond a reasonable doubt. Hence, although appellant's request No. 7 would have been proper, the point having been covered by instructions given by the court, it was not error to refuse it. State v. Carpenter, 67 Idaho 277, 176 P.2d 919. In State v. Ashby, 40 Idaho 1, 230 P. 1013, the appellant complained that the court, in its instructions, did not require the state to establish intent. It was held that the court's

opening instruction, following the language of the complaint, wherein it was alleged that the crime was "committed by appellant wilfully, knowingly and intentionally," etc., was sufficient.

Appellant's request No. 9 is as follows:

"The court further instructs the jury that if you find from the evidence that the defendant at the time he wrote the check, if you find he did write the check, did not know what he was doing, by reason of his intoxication, and was so far under the influence of alcohol that he could not form an intent to commit a crime, then you should acquit the defendant."

Although not admitting that he made and passed the check, the appellant based his defense entirely upon the proposition that he became so intoxicated, around Thanksgiving time in 1946, that he did not know what he was doing. He testified, "I got drunk in Klamath Falls, and came up here, and I came to myself in Walla Walla on Thanksgiving Day;" and further, that he had no recollection of going to the Petersons' fur store or the purchasing of a fur coat, or of going to Orofino or making a deposit in the bank there. While there is very little in the record to support this defense, except the testimony of the appellant, his testimony was sufficient to put the matter in issue. However, the jury was instructed that the intent to defraud was an essential element of the crime charged, and that such intent must

be proven by the state beyond a reasonable doubt, and that, "in determining the purpose, motive or intent," "the jury may take into consideration the fact that the accused was intoxicated at the time." From this it appears that the jury was advised as to the proper relation between intoxication and the element of intent. The jurors being advised that they must find that the defendant made the check "with intent to defraud", or that he passed the check "with intent to defraud," and being advised that on this question of intent they may consider the fact of intoxication, they were in effect told that they must find that the defendant did have the capacity to, and did entertain the intent. In other words, under the instructions given, the jury could not find the defendant guilty without finding that he acted with required intent to defraud, despite his alleged intoxication. To plan and execute a forgery, such as that shown here, requires, at least some degree of ability to think and enough cunning not to arouse suspicion in the victim. So when the jury found him guilty on a charge of acting "with intent to defraud" it necessarily found that he had the ability to "form an intent" to defraud.

It is not intended here to infer that an instruction such as requested should not have been given. The request is subject to the criticism that it assumes the state of intoxication contended for, and that it should have been limited to the intent to defraud. It was pertinent to the issue and, corrected, would have been a proper

instruction. ·· The holding here is that the refusal. to give it as requested under the facts of this case is not reversible error.

Appellant complains of the admission in evidence of the state's exhibit No. 4. This exhibit consists of a sheet of paper, upon which some notes were made of the interview between the officers and the appellant upon his return from Walla Walla, and four exemplars of his handwriting written by him at the request of the officers at that time. The other notations on the paper were folded under and stapled in that position. The jury was instructed not to unfold or disturb the exhibit and that the exhibit was admitted solely as to the exemplars written thereon by the defendant. While the extraneous matters may have been examined by the jury, it does not appear that they were, or that they are of such nature that any prejudice could have resulted if they had been. The admission of the exhibit was proper. State v. McDermott, supra; State v. Allen, supra.

The appellant also complains of admission of the state's exhibit No. 6, the waiver of extradition upon which his signature appears in two places. This was likewise properly offered and received for exemplar purposes. There is nothing prejudicial to the accused in the fact that he waived extradition.

The admission in evidence of state's exhibit No. 1, being the sales slip prepared by Mr. Peterson and signed by appellant, is assigned as error. Appellant does not argue or urge this assignment in his brief. It appears to be based upon the fact that there appears upon the slip an entry, apparently made after the check was returned, as follows: "Coat #1960, no sale, bad check, coat gone." The facts covered by this notation having been conclusively established by the testimony. of the witnesses, it cannot be said that appellant was prejudiced by the admission of this exhibit.

State's exhibit No. 3 is a check signed "J. J. Balden" as maker. The payee testified positively that it was signed by the appellant in his presence, and appellant testified that he later redeemed the check in cash, thus acknowledging that it was his check. It was admitted in evidence as an exemplar and the jurors were advised that consideration of it was limited to the signature, that being the only part written by the accused. In his assignment of error appellant says: "The witness Simmons testified that the same was signed in his presence by Thomas Baldwin and that the document itself shows that it was signed by some person named 'J. J. Baldwin' ". We see no error.

Appellant complains of the admission of state's exhibits Nos. 7 and 8, on the ground that there is no evidence they were signed by appellant. These are the signature card and deposit slip, which, with the ledger sheet (exhibit 9), are the record of the account at the Bank

of Orofino, and are material to the issue of intent. The state did not establish that the signature on the card was that of appellant, but the objection made to it was not on that ground. The scope of admissibility of such records was broadened by the legislature in 1939. Section 9-414, I.C. Henderson v. Allis-Chalmers, 65 Idaho 570, 149 P.2d 133.

Lastly, appellant assigns what he calls the restrictive rulings of the trial court by which he claims he was prevented from proving his intoxication, both at the time of the alleged forgery and at the time of his arrest when the exemplars were written by him. It does not appear from the record that he offered any testimony as to his condition of intoxication at either of these times, which was not admitted by the court, except that on the cross examination of state's witness, deputy sheriff Kyle, the court sustained respondent's objection to appellant's question as to appellant's physical condition in regard to being intoxicated or jittery at the time the exemplars were signed. Deputy sheriff Huddleston was permitted to answer a similar question upon his cross examination and deputy sheriff Burnap of Walla Walla was likewise permitted to answer a similar question upon cross examination concerning the condition of the appellant at the time of his arrest at Walla Walla, and the cross examination of the other state's witnesses was not restricted in that respect. Appellant offered to prove by one, Bear, that he had observed appellant on previous occasions when intoxicated and that on such occasions appellant had lapses of memory. This would be nothing more than self-serving declarations of the defendant coming into court by way of hearsay and a relation of events remote from the time pertinent to the inquiry. Objection to this offer was properly sustained.

Appellant offered to prove by his former wife that she obtained a divorce from him on the grounds of intoxication. Objection to this offer was likewise properly sustained.

The court sustained the state's objection to offered testimony of Mrs. Baldwin, contradicting testimony of state's witness Simmons, concerning the appellant's condition of intoxication on November 25th. However, defendant was permitted to testify concerning this same matter and, since the occasion referred to was two days before the alleged forgery, assuming that it was not too remote, we cannot say that appellant was prejudiced by the ruling.

The judgment appealed from is affirmed.

HOLDEN, C. J., and GIVENS and PORTER, JJ., and SUTPHEN, Dist. J., concur.