405 P.2d 970

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Homer H. BISHOP, Defendant-Appellant.**

No. 9630.

Supreme Court of Idaho.

Sept. 23, 1965.

Thomas A. Miller, Boise, for appellant.

Allan G. Shepard, Atty. Gen., and Weldon S. Wood, Asst. Atty. Gen., Boise, for respondent.

McFADDEN, Justice.

Appellant, Homer H. Bishop, was charged by information filed in Ada County with the crime of forgery, the charging portion of which reads:

"THAT THE SAID DEFENDANT, HOMER H. BISHOP, on or about the 27th day of June, 1964, in Ada County, Idaho, then and there being, did then and there wilfully, unlawfully, intentionally and feloniously and with the intent to defraud Albertson's Vista Food Center, attempt to utter, publish and pass as true and genuine to the said Albertson's Vista Food Center a certain false and fictitious check for the payment of money in the sum of One Hundred Twenty Seven and 75/100 (127.75) Dollars, lawful money of the United States of America, purporting to be the true and genuine check of one Stanley Jackson, which said check was and is in words and figures as follows, to-wit:

FAMILY FOOD SERVICE, INC.     955

125 EAST MAIN

WEISER, IDAHO     6–26–1964

Pay to the Order of Frank Allen     $127 75/xx

One Hundred Twenty Seven 75/100

WEISER OFFICE     FAMILY FOOD SERVICE, INC.

THE IDAHO FIRST NATIONAL BANK

WEISER, IDAHO     /s/ Stanley Jackson, President.

Whereas in truth and in fact there was no such individual as Stanley Jackson in existence, as he, the said defendant, then and there well knew, and the said check was false and fictitious as he, the said defendant, then and there well knew."

**420**

Trial was had before a jury. During the course of the trial State's Exhibit 1, which is the basis of the criminal charge, was admitted into evidence over appellant's objections that such check was beyond the material averments of the information and was fatally at variance with the information. Appellant asserted that the information charged an attempt to pass a check purporting to be the true and genuine check of Stanley Jackson, but the exhibit offered in evidence was not the check of Stanley Jackson, but was the check of "Family Food Service, Inc." The trial court admitted the check in evidence over this objeciton.

At the close of the State's case, appellant moved for a peremptory instruction of acquittal on the ground that there was no evidence of the essential elements of the crime charged. This motion was denied and the appellant then moved the trial court for an advisory instruction for the

jury to return a verdict of "not guilty" on the ground that the evidence was insufficient to establish the appellant's guilt beyond a reasonable doubt. This motion was also denied and appellant rested. After receiving the court's instructions, the jury returned a verdict of "guilty."

Appellant presents two assignments of error: (1) that the trial court erred in admitting State's Exhibit 1 into evidence; and (2) in denying his motion for a peremptory instruction of acquittal.

In support of this first assignment of error, appellant argues as he did in the lower court, that the "purport"[1] clause of the information charges an attempt to pass a check "purporting to be the check of one Stanley Jackson * * * whereas in truth and fact there was no such individual as Stanley Jackson in existence * * *," but that the "tenor"[1] clause or "videlicet"[1] of the information sets out a

1. These various terms have been defined as follows:

   "*Purport.* That which appears on the face of an instrument. The apparent and not the legal import of the instrument."

   "*Tenor.* The tenor of an instrument is an exact copy of the instrument. The word is not to be confounded with the word 'purport' which means the substance of an instrument, as it appears on the face of it to every eye that reads it. Under the rule that an indictment for forgery must set out the instrument

according to its 'tenor' the word imports an exact copy—that the instrument is set forth in the very words and figures."

   "*Videlicet.* That is to say; namely. * * *" Ballentine, Law Dictionary (1930) (Citations omitted)

   &ast; &ast; &ast; &ast; &ast;

   "*Purport.* Meaning; import; substantial meaning; substance; legal effect. The 'purport' of an instrument means the substance of it as it appears on the face of the instrument, and is distin-

corporation check of "Family Food Service, Inc." signed by Stanley Jackson as president, and hence there was a fatal variance between the pleadings and the proof. Appellant further argues that if there is a conflict between the "purport" clause and the allegations set forth under the "videlicet," the latter must be disregarded as surplusage, and hence that the trial court erred in admitting Exhibit 1, because of the variance beween it and the description set out in the purport clause of the information. In support of this, appellant cites the case of Colbert v. State, 80 Ga.App. 641, 56 S.E.2d 830 (1949). However, there is another line of authority that where there is a conflict or discrepancy between the "purport" clause of an information and the "tenor" clause under which the written instrument is set out verbatim, the "purport" clause will be disregarded as surplusage. State v. Kinder, 315 Mo. 1314, 290 S.W. 130, 51 A.L.R.

564 (1926). See also 37 C.J.S. Forgery, § 55, p. 73, which discusses the question.

In the opinion of the Georgia court in Colbert v. State, supra, which was a prosecution for illegal possession of wine, it is stated:

"'The office of the videlicit is to particularize that which is general and explain that which is doubtful or obscure; but it must neither be contrary to nor increase or diminish the precedent matter. If what comes under it is repugnant to the precedent matter the videlicit must be related as surplusage.' State v. Brown, 51 Conn. 1.

The material part of the indictment was as follows: the defendant did 'possess and control and have in his possession, custody and control, spirituous, alcoholic and intoxicating liquors and distilled spirits, to wit [the videlicit]: wine, being 24 pints thereof in

---

guished from 'tenor,' which means an exact copy."

"*Tenor*. A term used in pleading to denote that an exact copy is set out. * * * 'Tenor,' in pleading a written instrument, imports that the very words are set out. 'Purport' does not import this, but is equivalent only to 'substance.'"

"*Videlicet*. The words 'to-wit' or 'that is to say,' so frequently used in pleading, are technically called the 'videlicet' or 'scilicet;' and when any fact

alleged in pleading is preceded by, or accompanied with these words, such fact is, in the language of the law, said to be 'laid under a *videlicet*.' The use of the *videlicet* is to point out, particularize, or render more specific that which has been previously stated in general language only; also to explain that which is doubtful or obscure. Its common office is to state time, place, or manner which are of the essence of the matter in issue." Black's Law Dictionary (1951). (Citations omitted.)

pint bottles, said wine not being domestic wine distilled and made by the said accused for the use of himself and his family.' The effect of the videlicit was to restrict the charge to that of the possession of wine and the expression 'spirituous, alcoholic and intoxicating liquors and distilled spirits, to wit wine' is to be taken as meaning that the wine was of such a character as to fall within the meaning of either 'spirituous, alcoholic, or intoxicating liquors, or distilled spirits.' " 56 S.E.2d at 835.

In State v. Kinder, supra, the Supreme Court of Missouri has before it the issue of whether there was a fatal variance between the purport clause of an information which charged forgery of a check of Samuel Fowler and the tenor clause which set out the check verbatim and showed the check was signed "Samuel Fowler, by Kinder." A statute of Missouri provided on an indictment for forgery, the forged instrument could be described in the indictment by its purport without setting it out in the indictment. In determining that there was no fatal variance (even though the court did reverse the conviction of forgery on the ground of the insufficiency of the information because the check was signed by the defendant as an agent and hence it could not be forgery), the court stated:

"Where the instrument is set out according to its tenor, the purport clause must be disregarded as surplusage. [Citing cases] Where the instrument alleged to have been forged is set out, it is immaterial what the pleader conceives to be its legal effect. We must determine the character of the check from the instrument itself as pleaded in haec verba. [Citing case]" 290 S. W. at 131.

See also: Brown v. State, 157 Tex.Cr.R. 30, 246 S.W.2d 197, 198 (1952), where that court stated:

"A similar situation to that here presented was before us in Seely v. State, 139 Tex.Cr.R. 505, 141 S.W.2d 325, wherein we held, in effect, that inasmuch as the indictment set out in haec verba the alleged forged instrument, such description prevailed over a variant general description. Such holding is applicable and controlling here."

The more logical rule, in our opinion, is that when the instrument which is the subject of the action has been set out verbatim in the information, a purport clause attempting to define the legal effect thereof is merely a conclusion of law by the pleader and must be disregarded in evaluation of the sufficiency of the indictment or information. I.C. § 19–1409, defining the requirements of an indictment, requires "A statement of the acts constituting the offense in ordinary and concise language [etc.]." The conclusions of a pleader

would not comply with such statute in evaluation of an indictment or information.

■ The purpose of the rule prohibiting material variance between the averments in an information or an indictment and the proof in support thereof is to avoid surprise to the defendant and to protect the accused from another prosecution for the same offense. State v. Wheeler, 70 Idaho 455, 220 P.2d 687; State v. Love, 76 Idaho 378, 283 P.2d 925; 42 C.J.S. Indictments and Informations, § 254, p. 1274.

■ The trial court did not err in admitting into evidence State's Exhibit 1, as it is the same as the check set forth in the information, and appellant could not claim surprise or inability to properly prepare his defense. State v. Grider, 74 Wyo. 88, 284 P.2d 400, 288 P.2d 766 (1955).

By his second assignment of error, appellant contends that the trial court erred in denying his motion for a peremptory instruction of acquittal. His motion for this peremptory instruction was based on the ground that there was no evidence of certain material elements of the charge as set forth in the information. In addition to certain other claimed deficiencies in the evidence, appellant specifically asserts that there is no evidence that at the time of the alleged crime Family Food Service, Inc., was non-existent.

The record consists of the testimony of four witnesses called by the State and State's Exhibits 1 and 2. The first witness, Linda Knox, was a part-time employee at Albertson's Food Center on Vista Avenue, Boise, whose duties were to check groceries brought to her counter and receive the money for them. She testified that on June 27, 1964, appellant brought some groceries to her stand to be checked and to pay for them he gave her the check marked State's Exhibit 1. Not recognizing the name of the company on the check, she called the assistant manager to approve the check for payment. She also testified that appellant mentioned something about selling a car at the time he presented the check to her.

The next witness was H. Douglas Wallace, a Boise resident who testified he owned a business called the Family Food Service, Incorporated, of Weiser, Idaho, which he operated from about December, 1961, until April 7, 1962, when he went out of business. He stated that he was the president of the company and had maintained a checking account with The Idaho First National Bank in Weiser in connection with the business and that State's Exhibit 1 appeared to be the type of check blank used by his company. He stated the only persons authorized to write checks on this account were his secretary, Mabel Bowman, and himself. He further testified that no one by the name Jackson was authorized

to write checks on the account and he did not know anyone by the name of Stanley Jackson or Paul A. Jackson. He examined both State's Exhibits 1 and 2 and stated that Exhibit 1 was not issued by his business. He testified that Exhibit 2 also appeared to have been written on one of his company's check blanks but that the signature appearing thereon was not by anyone authorized to draw checks on that business. On cross-examination he stated he had lived in Boise since May, 1962, and made no attempt to find a Stanley Jackson either in Boise or the Weiser area.

The third witness, Martin Johnson, testified he owned and operated a bar in Garden City; that appellant cashed a check, which he identified as State's Exhibit 2; that appellant endorsed the check in the name of Homer Bishop. He also testified that appellant told him the check came from a man to whom he had sold a rifle or gun.

State's Exhibit 2 is a check dated May 15, 1964, in the amount of $124.68, payable to one Frank E. Allen, on the Weiser office of The Idaho First National Bank, and purportedly a check of Family Food Service, Inc., signed "Paul A. Jackson, President", and was admitted in evidence without objection. It was the check testified to by witness Johnson and was offered by the State for the purpose of showing a common scheme or plan on the part of appellant and to indicate his intent and guilty knowledge

of the facts involved. This exhibit by stamped endorsements thereon shows it was sent through the banks for payment but returned marked "account closed."

The testimony of the fourth witness presented no facts material to the issues.

Both the State and appellant are in agreement that this prosecution was brought under the provisions of I.C. § 18–3606, which states:

"Every person who makes, passes, utters, or publishes, with intention to defraud any other person, or who, with the like intention, attempts to pass, utter or publish, or who has in his possession, with like intent to utter, pass, or publish, any fictitious bill, note or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of some bank, corporation, copartnership, or individual, when in fact, there is no such bank, corporation, copartnership, or individual in existence, knowing the bill, note, check, or instrument in writing to be fictitious, is guilty of forgery and punishable as provided by section 18–3604."

No question has been presented that this prosecution was under the provisions of I.C. § 18–3601, which has been held to include a charge of forgery by the signing of the name of a fictitious person. State v. Allen, 53 Idaho 737, 27 P.2d 482.

Also, both parties are substantially in accord that the material elements of the crime as alleged in this information under I.C. § 18–3606 to be proven are:

1. An attempt to pass a fictitious check.

2. The check must purport to be that of a corporation or individual not in existence.

3. Knowledge of the fictitious nature of the check.

4. Intention on the part of the accused to defraud.

Appellant urges that I.C. § 18–3606 makes it a crime to attempt to pass as genuine a check purporting to be the check of an individual when there is no such individual in existence, assuming, of course, that such attempt is accompanied with the requisite elements of intent and knowledge; that such statute also makes it a crime to attempt to pass as genuine a check purporting to be the check of a corporation when there is no such corporation in existence. He then asserts that the statute does not make it a crime to attempt to pass as true and genuine a check purporting to be the check of a corporation in existence when the person purporting to sign the check for the corporation is not in existence. The state contends, however, that the crime is committed, assuming other elements are present, upon attempting to pass as genuine a check of a corporation when the non-existence of either the corporation or individual who signed the check on behalf of the corporation is shown.

The statute involved deals with fictitious checks of "some bank, corporation, copartnership, or individual." Here the evidence shows the check involved is that of a corporation, i. e., Family Food Service, Inc., and not the check of an individual. The evidence fails to show the non-existence of such corporation. The testimony of Mr. Wallace was merely to the effect that he went out of business sometime before. There is no evidence from the Secretary of State's office as to the non-existence of the corporation; there is no testimony from any bank official that the account had been closed because the corporation no longer existed; there is no testimony by Mr. Wallace that the corporate existence of Family Food Service, Inc., had ceased. (See Pacific Northwest Bell Telephone Company v. Rivers, 88 Idaho 240, 398 P.2d 63 (1965).

Under the information appellant was charged with the crime of attempting to pass the fictitious check of a corporation. While other charges might have been brought under this particular set of facts, the existence or non-existence of the party who purportedly executed the check on behalf of the corporation is immaterial under the charge as set out in the information. Before a legal conviction can be had, the State must establish the accused's guilt of the crime charged by legal evidence beyond

a reasonable doubt. State v. Pullos, 76 Idaho 369, 382 P.2d 590 (1955); State v. Varnes, 67 Idaho 183, 174 P.2d 200 (1946); State v. Rankin, 56 Idaho 64, 50 P.2d 3 (1935). Here the non-existence of the corporation was not proven. See People v. Elliot, 90 Cal. 586, 27 P. 433 (1891); People v. Eppinger, 105 Cal. 36, 38 P. 538 (1894).

By reason of the lack of proof, the trial court erred in not granting appellant's motion for a peremptory instruction to the jury to bring in a verdict of not guilty. State v. McCarty, 47 Idaho 117, 272 P. 695; State v. Adair, 70 Idaho 486, 222 P.2d 741; State v. Powaukee, 78 Idaho 257, 300 P.2d 488.

TAYLOR, Justice (concurring and dissenting).

Prior to 1931 what is now I.C. § 18–3606 defined and fixed the punishment for an offense separate and apart from the crime of forgery. The 1931 session of the legislature (S.L. 31, ch. 171, p. 284) amended that section by providing that a person violating its provisions "is guilty of forgery and punishable as provided by section 8411 [now I.C. § 18–3604]." By that action the legislature broadened the definition of forgery as theretofore defined by I.C. § 18–3601, to include the acts proscribed by I.C. § 18–3606. Thus in effect the legislature combined sections 18–3601 and 18–3606 as an all-inclusive definition of the crime of forgery.

In State v. Baldwin, 69 Idaho 459, 208 P.2d 161, this court recognized that the two sections taken together contain the definition of forgery, and said:

"* * * Sections 18–3601 and 18–3606, I.C., defining forgery, set forth a great many acts and means by which the crime may be committed. The commission of any one of the proscribed acts, with the intent to defraud, is sufficient. State v. McDermott, 52 Idaho 602, 17 P.2d 343; State v. Allen, 53 Idaho 737, 27 P.2d 482. It is obvious that the commission of the crime of forgery cannot be limited to cases requiring 'that the defendant forged or counterfeited the seal and handwriting of another.' Further, the crime is committed by making, altering, etc., with the necessary intent as well as by uttering, publishing, passing, etc., with intent. If the prosecution proves the commission of the offense by either of these means, it is sufficient. The state is not required to prove both, as was requested by the appellant. State v. McDermott, supra." 69 Idaho at 464, 208 P.2d at 164.

In State v. Allen, 53 Idaho 737, 27 P.2d 482, the state charged forgery by the making and passing of a false bank check

under the provisions of I.C. § 18–3601. As here, the check was set out in the information. The defendant was convicted and on appeal contended that the charge was not properly brought under the provisions of § 18–3601, and that since it consisted of the making and passing of a fictitious check the charge should have been brought under § 18–3606. The court brushed the contention aside, saying:

"So that since the amendment of section 8414, C.S., now section 17–3706, I.C.A. [now I.C. § 18–3606], any and all of the acts mentioned in section 17–3706, as well as any and all the acts mentioned in section 17–3701, I.C.A. [now I.C. § 18–3601], constitute forgery."

In other words, this court has said that an accused may be convicted of forgery by means of a fictitious check under the provisions of either § 18–3601 or § 18–3606, according to the allegations and proof in that particular case.

In this case the allegations of the information are sufficient to charge forgery under both § 18–3601 and § 18–3606. The words "did then and there wilfully, unlawfully, intentionally and feloniously and with the intent to defraud Altertson's Vista Food Center, attempt to utter, publish and pass as true and genuine * * * a certain false and fictitious check * * * and the said check was false and fictitious as he,

the said defendant, then and there well knew," are sufficient to charge forgery as defined by § 18–3601. Coupled with these allegations the other allegations of the information are sufficient to charge forgery as defined by § 18–3606.

In its instructions to the jury, the court not only defined forgery as provided by § 18–3606 (Instruction No. 12), but in Instructions 14, 15, 17, 19 and 23 the court also set forth the elements of forgery as defined by § 18–3601. Instruction No. 23 stated the proof essential to a conviction as follows:

"First: That the check set forth in Instruction No. 1 herein, and introduced in evidence as State's Exhibit No. 1, is a false and fictitious check;

"Second: That the defendant on or about the 27th day of June, 1964, in Ada County, Idaho, attempted to utter, publish and pass said check as a true and genuine check, knowing at the time that the same was a false and fictitious check, and that he did so attempt to utter and pass the same with intent to defraud Albertson's Vista Food Center."

Instructions on more than one manner or means of committing the offense charged was upheld in State v. Monteith, 53 Idaho 30, 20 P.2d 1023.

We have repeatedly held that when a statute defining a crime provides

that the crime may be committed by several means or by several acts, any or all of such means or acts may be charged in the conjunctive, and that such a charge is not duplicitous, and charges but one offense. State v. Coburn, 82 Idaho 437, 354 P.2d 751 (1960); State v. Anderson, 82 Idaho 293, 352 P.2d 972 (1960); State v. Petty, 73 Idaho 136, 248 P.2d 218 (1952); State v. Scott, 72 Idaho 202, 239 P.2d 258 (1951); State v. Linebarger, 71 Idaho 255, 232 P.2d 669 (1951); State v. Ayres, 70 Idaho 18, 211 P.2d 142 (1949); State v. Salhus, 68 Idaho 75, 189 P.2d 372 (1948); State v. Monteith, 53 Idaho 30, 20 P.2d 1023 (1933); State v. Alvord, 46 Idaho 765, 271 P. 322 (1928); State v. Brown, 36 Idaho 272, 211 P. 60 (1922); State v. Gruber, 19 Idaho 692, 115 P. 1 (1911). Proof of the commission of the crime by any one of the means or acts set out in the statute will sustain a conviction.

In State v. Brown, supra, this court quoted the Supreme Court of Kansas as follows:

" 'Where the statute makes either of two or more distinct acts connected with the same general offense, and subject to the same measure and kind of punishment, indictable separately and as distinct crimes, when each shall have been committed by different persons, and at different times, they may, when committed by the same person and at the same time, be coupled in one count as constituting all together but one offense. In such cases * * * the offender may be informed against as for one combined act in violation of the [statute], and proof of either of the acts mentioned in the statute and set forth in the information will sustain a conviction.' State v. Schweiter, 27 Kan. 499; State v. Sherman, 81 Kan. 874, 107 Pac. 33." 36 Idaho at 276, 211 P. at 61.

The fact that there are allegations in the information alleging additional elements of forgery as defined in § 18–3606 as to which the proof may be insufficient, does not warrant this court in reversing the conviction, when, as here, the conviction is sustained by proof of conduct defined as forgery, in § 18–3601. State v. Baldwin, supra; State v. Allen, supra; State v. McDermott, 52 Idaho 602, 17 P.2d 343.

On other issues raised I concur in the opinion by McFADDEN, J.

McQUADE, C. J., and SMITH and KNUDSON, JJ., concurring herein, the judgment of conviction is affirmed.