[Filed March 19, 1885.]
# THE STATE OF OREGON *v.* AARON LURCH.

CRIMINAL LAW—INDICTMENT—FORGERY.—In an indictment for forgery it is not necessary to name any particular person in the indictment as having been defrauded. But the naming of such a person would have the effect to confine the proof of defrauding to the person named.

ID.—EVIDENCE—SIMULATED HANDWRITING.—Where the defendant admitted in his opening statement to the jury that he intentionally wrote the names alleged to have been forged as near like the parties would have written them as he could, evidence is nevertheless admissible to show that such names are in a different handwriting from the body of the instrument.

EVIDENCE—CROSS-EXAMINATION—CONTRADICTORY STATEMENTS.—The rule that when a witness has made statements different from those testified to by him on the trial his attention may be called to them, and if he deny having made them witnesses may be called to prove that he did make them, applied.

LANE COUNTY.   Defendant appeals.   Affirmed.

The facts are stated in the opinion.

*W. R. Willis*, for Appellant.

*J. W. Hamilton, District Attorney*, for Respondent.

THAYER, J.—The appellant herein was indicted by the grand jury of the county of Lane for the crime of forgery, and subsequently tried and convicted of that offense. From the judgment of conviction entered thereon he has appealed to this court. He assigned several grounds of error in his notice of appeal, and which have been submitted for the consideration of the court. We have heard them discussed by the respective counsel in the case, and are of the opinion that no such error was committed as would justify a reversal of the judgment.

The demurrer to the indictment was properly overruled. The latter was in the usual form; charged the appellant with having forged Samuel Dillard's and A. H. Spare's names to a promissory note, made payable to one J. E. Holt, and with the intent to injure and defraud the said Holt.

The counsel for the appellant claimed that the indictment was defective, in that it did not show how any injury had or could occur to the said Holt. Counsel admitted that it was not neces-

sary to name anyone as having been injured or defrauded; but as the prosecution had seen fit to name the payee in the note as the intended injured party, it should have shown how he was or could have been injured. But as we view the question, under our statute, it is a matter of evidence, and not necessary to be alleged; that a charge of an intent to injure or defraud generally, or an intent to injure and defraud a particular person, is sufficient. (Crim. Code, § 600.) The naming a particular person, in such case, would have no effect except to confine the prosecution, in its proof of injury or defrauding, to the particular person named. The admission of testimony to show that the signatures of Dillard and Spare to the note appeared to have been written in a different handwriting than that of the body of the note was proper, although the appellant admitted, in his opening statement to the jury, that he signed the names of the said parties to it. The change of the handwriting was a material circumstance to be submitted to the jury, notwithstanding the appellant admitted that he intentionally wrote the names of the two parties as near like they would have written them as he could, and gave as a reason therefore "that he thought that was the right way to write it to make it legal."

The jury might not be satisfied with such childlike and bland explanation, might believe that it was only a subterfuge, and that it indicated guilt.

The main ground of error was the admission of testimony to contradict the appellant's testimony, called out by the State, as to what he said to Mrs. Kinsey at the time he borrowed $900 from her, and to Washburne on the same occasion; also what he said to Whipple at Cottage Grove at the time he got money of him, as Mr. Garrott's agent, on the note he gave Garrott. It is a well-established principle of the law of evidence that a witness, upon cross-examination, cannot be examined upon an immaterial or collateral point with a view of contradicting the testimony elicited, in order to impeach the witness. But upon the other hand, when a witness has made statements at another time different from those testified to by him upon the trial, his attention may be called to such statements, and if he deny hav-

ing made them, witnesses may be called to prove that he did make them. The question here to be determined is whether the evidence objected to, and which is now made the subject of complaint by the appellant's counsel, came within the first or second rule referred to. It will be observed from the bill of exceptions that the appellant, when upon the stand as a witness, was attempting to establish that he had authority from both Dillard and Spare to sign their names to the note. He undertook to show it by showing that he had been accustomed to sign their names to promissory notes with their knowledge and acquiescence. He was asked by his counsel to state what notes he had signed Mr. Dillard's name to, which he had ratified, and answered: "Three notes to Mr. Chrisman, one to Mr. Wingard, and two to Mr. Shultz, one to Garrott." He said: "I also signed the names of Spare and Dillard to a note to Mrs. Kinsey of $900, for money borrowed from her through Mr. Washburne, her attorney. I saw Mrs. Kinsey about the loan. I went to see her in company with Mr. Washburne." He was then asked by his counsel the following question: "Did Mr. Spear and Mr. Dillard know that you were using their names to notes?" He answered: "They did; they never objected to my using their names." He was then interrogated by his counsel as to what notice Spear had that he was using their names, and he proceeded to mention circumstances showing that Spare knew it. Then the State called out the testimony before referred to; asked the appellant if he did not tell Mrs. Kinsey, at the time he went with Mr. Washburne to see her about borrowing $900 from her, that Mr. Spear and Mr. Dillard would sign the note with him as security; if he did not tell Mr. Washburne, at the time he got the money of Mrs. Kinsey from him, that Dillard and Spare had signed their names to the note themselves; and if he did not tell Mr. E. W. Whipple, at Cottage Grove, at the time he got the money from him, as Mr. Garrott's agent, on the note that he gave Mr. Garrott, that Dillard had signed his name to that note himself. If this testimony tended to contradict the statements made by the appellant, when on the stand as a witness, in regard to his having had authority to sign Dillard's and

Spare's names to promissory notes, then it was competent, and if the appellant denied making the statements called for by the testimony they could be proved by other parties.

It may, we think, reasonably be inferred from the bill of exceptions that the appellant, by referring to the Kinsey and Garrott notes, intended to have it understood that they were notes he had signed Dillard's and Spare's names to, with the understanding from them that he might do so. But when he dealt with the parties and their agents at the time he borrowed the money, according to their testimony, he represented that he would procure said Dillard and Spare to sign the notes as surety for him, and told them afterwards that they had signed the notes themselves. The appellant attempted to establish that he had authority to sign the names of said parties to the Holt note, from the fact that he had signed their names to other notes, and that they had ratified his acts in so doing; that among the notes he had signed their names to he mentioned those of Mrs. Kinsey and Garrott. Now, if it were a fact that he told the latter parties and their agents that he was going to and had procured said parties to sign the notes themselves, it would hardly be consistent with his statements upon the witness stand. It seems to me that it would have been competent to have inquired of him, upon the cross-examination, whether he told Mrs. Kinsey or the agents of Garrott that he had such authority when he negotiated the loans, and that a suppression of the fact at that time was a circumstance affecting his credibility concerning his pretended claim of authority. The appellant was endeavoring to prove from circumstances that he had such authority, and the signing the two notes referred to was a part of the circumstances from which the fact was to be inferred. Any proof, therefore, showing that the circumstances were unimportant would be material.

If the appellant, when he borrowed the two several sums of money from Mrs. Kinsey and Garrott, had openly avowed what he claimed and testified to at the trial in regard to his authority to sign the names of the two parties to notes, it would certainly have strengthened the evidence upon which he relied to main-

tain his defense. Upon the other hand, if he avoided making any such disclosure, and made statements and representations showing that he had no such authority, it would have tended very much to weaken it, and been incompatible with his testimony. His conduct, upon the occasion of his borrowing the money, according to the testimony of the parties who transacted the business, we think, tended to contradict what he testified to at the trial, and was properly received in evidence for that purpose. At least, it showed that those transactions were not evidence that he had any authority to sign said parties' names to promissory notes.

Judgment is therefore affirmed.