UNITED STATES of America, Appellee,

v.

STEINER PLASTICS MFG. CO., Inc., Defendant-Appellant, and Malcolm I. Steiner, Defendant.

No. 240, Docket 23824.

United States Court of Appeals Second Circuit.

Argued Feb. 6, 7, 1956.

Decided March 16, 1956.

LUMBARD, Circuit Judge.

The defendant corporation is here appealing from its conviction and fines imposed totalling $45,500 for conspiracy and six counts in violation of 18 U.S.C.A. § 1001 which reads as follows:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

In 1953 Steiner Plastics Mfg. Co., Inc., was engaged in the manufacture of plexiglass cockpit canopies pursuant to a sub-contract from the Grumman Aircraft Engineering Corporation, which was producing jet planes for the United States Navy. Malcolm Steiner was the President of Steiner Plastics and he and his wife were the sole stockholders. The contract with Grumman provided that all canopies produced by Steiner Plastics would be subject to inspection by Grumman and by the Navy. During the period in question these inspections took place at the Steiner plant in Glen Cove, New York. During 1953 difficulties developed in the production of the canopies and some 250 defective or incomplete canopies accumulated at the Steiner plant. Many of these were successfully reworked, but in June of 1953 approximately 100 canopies remained which could not successfully be reworked to pass inspection. A scheme was thereafter devised whereby some of these canopies were to be shipped without proper inspection by switching approval stamps and serial numbers from canopies which had previously been approved by Grumman and the Navy to other canopies which had not been so approved.

Harold M. Kennedy, New York City (Mario Pittoni, Brooklyn, N. Y., Robert F. Lynch, New York City, of counsel, on the brief), for defendant-appellant.

Leonard P. Moore, U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (Robert J. Lederman, Asst. U. S. Atty., Brooklyn, of counsel, on the brief), for appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

The government's principal witness, Walter Speck, who had been production manager of defendant corporation at the times in question, testified that he suggested this scheme to Malcolm Steiner and that Steiner authorized him to carry it out. Malcolm Steiner, joined as a defendant and tried with the corporation, denied such a conversation with Speck and testified that he had no knowledge that any switching was being done. There was considerable testimony that the approval stamps were in fact switched by employees of the defendant corporation, Neal DeStefano, Michael Foti, and Pete Foti, and that this was done at the direction of Walter Speck. All of these four testified that they participated in the scheme. The defendants apparently conceded this much since Malcolm Steiner himself testified that he later learned that such switching had been done, and the testimony even of the defendants' witnesses was based on this premise. The defense counsel at no time argued that the switching had not taken place or that it had not been done by the employees listed above. The jury disagreed as to the guilt of Malcolm Steiner, but they found the corporation guilty on the conspiracy count and on the six substantive counts submitted to them. The defendant corporation now alleges a variety of errors at the trial which it claims were prejudicial.

■ 1. The defendant corporation first complains that there was no violation of § 1001 because the switching of approval stamps was not a matter "within the jurisdiction of any department or agency of the United States". The subcontract from Grumman, however, provided that the canopies produced by the defendant would be subject to inspection by representatives of the Navy. Moreover, the canopies involved in the counts on which the defendant was convicted were all shipped directly to the Navy by the defendant on government bills of lading. The scheme used by the corporation's employees was manifestly intended to deceive both the Navy and Grumman and thus it was clearly within the jurisdiction of an agency of the United States within the meaning of § 1001. Nye & Nissen v. United States, 9 Cir., 1948, 168 F.2d 846, 850–851, affirmed 1949, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919; see United States v. Leviton, 2 Cir., 1951, 193 F.2d 848, 851, certiorari denied 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350, rehearing denied 343 U.S. 988, 72 S.Ct. 1079, 96 L.Ed. 1375.

■ 2. The defendant contends that since the trial court refused to admit evidence to show that the canopies in question were defective or had been rejected, there was a failure to establish that the defendant or its employees had falsified or concealed "a material fact" as required by the statute. The trial judge was correct, however, in ruling that no such evidence was necessary. The transfer of the approval stamps concealed at least the fact that the canopies to which they were transferred had not been approved. This was a material fact within the meaning of the statute. Nor does it make any difference that the indictment alleged that the canopies were in fact defective or had in fact been rejected. This was surplusage and was properly so treated by the trial judge. The government need not prove everything in the indictment, but only what is necessary to make out a violation of the statute. Frazier v. United States, 1947, 82 U.S.App.D.C. 332, 163 F.2d 817, affirmed 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187, rehearing denied 336 U.S. 907, 69 S.Ct. 488, 93 L.Ed. 1072.

■ 3. The trial judge refused to allow Malcolm Steiner to testify as to difficulties he had with Grumman in connection with production of the canopies and as to statements which he made that the contract might be abandoned. This testimony was irrelevant and was properly excluded.

■ 4. Likewise the exclusion of testimony regarding the defendant corporation's sound financial condition and high income was proper as it was irrelevant.

■ Before considering the rest of the defendant's objections, it is appropriate to consider the nature of the evidence upon which the jury's verdict was based. Errors which might be prejudicial to a defendant against the background of a weak or doubtful case may be harmless where the government's case was so clearly established that a jury could not reasonably have found the defendant innocent. United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; Horning v. District of Columbia, 1920, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185. In this case it was conceded that Speck, DeStefano and the two Fotis switched the approval stamps and serial numbers from approved canopies to canopies which had not been approved. Speck stood high in the corporate hierarchy since he was manager of production and made most of the day-to-day decisions in connection with the production of the canopies for Grumman. DeStefano was also a supervisory employee.

■ In order to prove the corporation guilty it was not necessary for the government to show that an officer or director was involved in the fraudulent scheme. It was enough to show that agents of the corporation acting within the area entrusted to them had violated the law. United States v. George F. Fish, Inc., 2 Cir., 1946, 154 F.2d 798, certiorari denied 1946, 328 U.S. 869, 66 S.Ct. 1377, 90 L.Ed. 1639; see St. Johnsbury Trucking Co. v. United States, 1 Cir., 1955, 220 F.2d 393, 398 (Magruder, C. J. concurring). This is true as to the conspiracy count as well as the substantive counts. CIT Corporation v. United States, 9 Cir., 1945, 150 F.2d 85, 89–90. Although the trial judge's initial instructions to the jury seemed to indicate that the corporation could only be guilty if Malcolm Steiner was involved in the scheme, his later instructions in answer to a question from the jury clearly stated that there was no such requirement. The jury, having deliberated for more than nine hours, sent this question to the judge:

"Under United States laws can we hold the corporation responsible for the alleged criminal acts not only of the officers of the corporation but also of the alleged overt and criminal acts of its employees?"

The judge answered this question in these words:

"If the jury find that Speck or any other employee, DeStefano or Foti, acting in the course of their employment, did the overt acts or the crimes charged in the substantive counts 2 to 7, but that Steiner did not know of or participate in them, the jury can find the corporation guilty under these circumstances and Steiner innocent."

The record then shows that counsel for the defendant specifically consented and agreed to this charge. One hour and twenty minutes later the jury reported their conviction of the corporation, and their disagreement on Malcolm Steiner.

■ 5. Defendant objects to testimony by the government's witness, Joseph Gardiner, that the canopies in question were to be used in jet fighter planes with a speed of 650 miles per hour and an altitude of 40,000 feet. It appears from the record, however, that the defense counsel did not object to this testimony until after the question had been asked and answered and that on the defendant's objection the testimony was stricken out. In view of the overwhelming proof of the corporation's guilt this testimony could not have been prejudicial.

■ 6. The defendant next complains of various remarks made by the prosecutor in his summation. The most objectionable statement was the following which occurred just before he closed:

"Something impelled me to look at that flag and it seemed to me that the stars were blinking in amazement at what they had heard and that the field of blue in which those stars are embedded gave the decided aspect to that flag for blue it was and blue it was for that day when

an American betrays, cheats and defrauds his country."

We cannot say that this argument went so far beyond the proper limits of summation as to constitute reversible error. In the light of the uncontradicted evidence which established all of the elements of the crime, we feel that there was no substantial prejudice to the corporate defendant. As has already been shown, the defense counsel and the defense witnesses virtually conceded everything necessary to the corporation's guilt. Moreover, the jury must have been perfectly well aware that the reference to the flag was a figure of speech and nothing more; they were quite able to give it the weight to which it was entitled. Indeed, the use of such exaggerated and flamboyant metaphors is as likely to have an effect quite contrary to that which apparently was sought by the prosecutor.

7. Defendant also contends that it was prejudiced by the trial judge's frequent interjections and prejudicial comments on the testimony of Malcolm Steiner and some of the defense witnesses. It is true that the judge interjected himself into the case more than was desirable or necessary. In a few instances he questioned Malcolm Steiner and some of the defense witnesses in a way which was prejudicial to the defense. The trial judge's interference with the defendant's witnesses, however, was not substantially greater than his interference with witnesses for the prosecution. In the light of the considerations set forth above these transgressions did not amount to such error as to require reversal as to the corporation.

8. Defendant complains of the exclusion of evidence which would have shown that Malcolm Steiner's failure when he was first questioned to reveal the names of those responsible for the switching of approval stamps was based on the advice of counsel. This was at best a collateral issue going only to Steiner's individual consciousness of guilt. It had very little relevance to the guilt of the corporation since that guilt need not be predicated upon Steiner's involvement.

9. Defendant's last and most substantial contention is that the trial court erred in refusing to admit certain testimony which the defendant offered to impeach Speck. Speck first testified that shortly after the conversation with Steiner in May 1953, during which Steiner instructed him to go ahead with the switching of the approval stamps, he told a number of his fellow employees about Steiner's instructions. The next morning he changed his testimony and said that he did not convey this information to his fellow employees until August 26, 1953, the day when the fraudulent scheme was discovered. The defendant offered the testimony of five employees named by Speck as those to whom he had mentioned Steiner's instructions to switch approval stamps. These witnesses would have testified that Speck had never talked to them about Steiner's instructions. The Assistant United States Attorney objected and the trial judge sustained the objection and ruled out all such evidence. This evidence was directly relevant only on the question whether Malcolm Steiner was involved in the conspiracy, and at a retrial of his case it should be admitted. As to the corporation, however, it was of very little importance. At best the evidence of the five employees might have impeached Speck so that the jury would have disregarded all of Speck's testimony. But even without Speck's testimony the illegal acts on the part of Speck, DeStefano and the two Fotis were clearly established. The exclusion of this testimony was therefore not error prejudicial to the corporation.

The conviction is affirmed.