**Gordon H. ROBERTS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 992.

Supreme Court of Alaska.

Sept. 5, 1969.

Barry W. Jackson, Jackson & Fenton, Fairbanks, for appellant.

Gerald J. Van Hoomissen, Dist. Atty., Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

BONEY, Justice.

Appellant brought this appeal after being convicted of the crimes of forgery and passing a forged check.

Appellant claims on appeal that the court erred in admitting into evidence certain handwriting samples obtained from him while he was in jail awaiting trial. He maintains that this evidence was obtained in violation of his constitutional privilege against self-incrimination and in violation of his constitutional right to counsel. He also contends that the samples were inadmissible because they were obtained from him by coercion.

The appellant was indicted on November 8, 1967, and was arraigned on November 13, 1967. At this arraignment, Fairbanks attorney Barry W. Jackson was named as his court-appointed counsel. While the appellant remained in jail in pretrial confinement, he was interviewed on December 14, 1967, by U.S. Secret Service Agent Dobish and Fairbanks City Detective Lieutenant Gibson, in an effort to secure handwriting samples. Dobish and Gibson conducted the interview without the presence or consent of appellant's appointed defense counsel. At this interview, it appears that the handwriting samples were taken even though appellant had told Gibson that his attorney should be contacted. Gibson testified that Dobish told appellant the samples would be sent to a handwriting expert for comparison tests with signatures on a suspect check in a federal case. Gibson testified that he told appellant he did not have to give a handwriting sample; but if he refused, a court order could be obtained; and if appellant did not comply with the order requiring him to give samples, "there could be a contempt of court proceedings then." Gibson denied telling appellant that handwriting samples would not be used in court.

Appellant testified that it was Dobish who requested the handwriting samples, that he did not want to give them, and that he did give them only after being told that a court order would be obtained and that he would be prosecuted for contempt of court. Appellant claimed that Dobish advised him that the samples would not be used in court. Counsel for appellant was contacted by Gibson and was requested to consent to the taking of handwriting samples. Counsel advised Gibson that he did not consent to the taking of the handwriting samples and would check the law on the question. Nevertheless, the handwriting samples were taken from appellant.

Later, the State of Alaska made a motion under Criminal Rule 26(b) (3) to require the appellant to give further handwriting samples.[1] This motion was denied. Later, at the trial of the case, the judge who presided at the trial admitted the samples obtained by Dobish into evidence.

We conclude that the admission of this evidence by the trial court was error. Since this evidence and the expert testimony concerning it constituted a great portion of the state's case, we cannot say that this

1. Crim.R. 26(b) (3) provides:
   An accused in a criminal action has no privilege to refuse, when ordered by the court, to submit his body to examination or to do any act in the presence of the court or the trier of the fact, except to refuse to testify.

evidence did not appreciably affect the jury's determination of the appellant's guilt.[2] It should be noted that there was no direct evidence that Roberts was the person who cashed the check in Count I of the indictment. Therefore, the appellant's conviction must be set aside and this case reversed and remanded for a new trial.

■ In support of our conclusion, we hold that the appellant's constitutional right to counsel under the Alaska Constitution was violated.[3] We are not bound in expounding the Alaska Constitution's Declaration of Rights by the decisions of the United States Supreme Court, past or future, which expound identical or closely similar provisions of the United States Constitution. We believe that the holding of this court in the case, Knudsen v. City of Anchorage, 358 P.2d 375, 379 (Alaska 1960) which is quoted as follows is erroneous:

We hold that it was not the intent of the Alaska Constitutional Convention, in adopting a portion of the wording of the Sixth Amendment, to give to article I, section 11 any broader application than that portion of the Sixth Amendment

had been given by the United States Supreme Court.

To the extent that the above holding in *Knudsen* is inconsistent with this opinion, it is overruled. Such a holding in *Knudsen* is inconsistent with the constitutional grant of judicial power to this court. To look only to the United States Supreme Court for constitutional guidance would be an abdication by this court of its constitutional responsibilities. This court has not always followed the generalized holding in *Knudsen*.[4] Other high state courts in interpreting their constitution have anticipated or applied standards different from those minimally required by the United States Supreme Court.[5]

■ The state cites Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) as authority for the proposition that a criminal defendant can be required to give handwriting exemplars without violating his privilege against self-incrimination and his right to counsel as protected by the fifth and sixth amendments. As previously stated, we are not limited by decisions of the United States Supreme Court or the United States Constitution when we ex-

2. Love v. State, 457 P.2d 622 (Alaska, July 8, 1969).

3. Alaska Const. art. I, § 11 provides in part:
The accused is entitled to * * * have the assistance of counsel for his defense.

4. In Matthews v. Quinton, 362 P.2d 932 (Alaska 1961) in interpreting Alaska Const. art. VII, § 1, this court took a restrictive view toward this provision of our constitution:
No money shall be paid from private funds for the direct benefit of any religious or other private educational institution.
This court held that providing transportation of school children to non-public schools at public expense would be a contravention of the state constitution. However, on the other hand, the United States Supreme Court in interpreting analogous constitutional provisions of the United States Constitution prohibiting laws which respect the establishment of religion, took a different view and held

that providing transportation of school children to non-public schools at public expense was aid to the child, and not aid to a religion. Everson v. Board of Educ., 330 U.S. 1, 18, 67 S.Ct. 504, 91 L.Ed. 711, 725 (1947).

5. People v. Donovan, 13 N.Y.2d 148, 243 N.Y.S.2d 841, 193 N.E.2d 628, 629 (1963) extended the New York State constitutional right to counsel during police interrogation prior to the United States Supreme Court's holdings in Escobedo and Miranda; California in People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 915, 50 A.L.R.2d 513 (1955) adopted the exclusionary rule prior to Mapp v. Ohio, stating "In developing a rule of evidence applicable in the state courts, this court is not bound by the decisions that have applied the federal rule * * *." In Perez v. Lippold, 32 Cal. 2d 711, 198 P.2d 17 (1948) (Traynor, J.) the California court outlawed miscegenation thus anticipating by 19 years the United States Supreme Court's ruling in Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

pound our state constitution; the Alaska Constitution may have broader safeguards than the minimum federal standards.[6] *Gilbert* held by a vote of five to four that denial of counsel at the taking of handwriting exemplars after arrest but before indictment or appointment of counsel was not a deprivation of the right to counsel because this was not a "critical stage." The four dissenting justices stated there was a deprivation of the right to counsel because this was a "critical stage." The dissenting justices noted that counsel could prevent unfair or inaccurate exemplars or confessions under the guise of exemplars, from being taken, and that exemplars could have great weight at trial. Four of the nine justices of the Supreme Court of the United States found unpersuasive the majority argument that absence of counsel most probably would not derogate from defendant's right to a fair trial.

We find that article I, § 11 of the Alaska Constitution requires counsel in the circumstances of the present case.

■ It is important to note that *Gilbert* is distinguishable on its facts. In *Gilbert*,[7] the exemplars were taken before indictment and appointment of counsel. In this case they were taken after indictment and appointment of counsel. Therefore, inquiry was more clearly focused on the accused. No material delay would have occurred because of any need to appoint or select counsel.[8] *Gilbert* held as a logical prerequisite to its right-to-counsel holding that the accused had no right to refuse to grant handwriting exemplars.[9] Had this

issue not been resolved, the taking of exemplars would have been a "critical stage" because an attorney might have prevented the taking of exemplars or delayed them until adequate judicial supervision could be obtained. We do not decide whether compulsion of handwriting exemplars is barred by article I, § 9 of the Alaska Constitution [10] or, if not, whether Criminal Rule 26(b)(3) by negative implication confers a privilege to refuse to grant them except when ordered to do so by a court. We are not now prepared to interpret conclusively these provisions. We would have to hold in the negative on both propositions in order to follow the holding of *Gilbert*. The legal context of this case is materially different from *Gilbert*.

The prejudice to appellant from the violation of his right to counsel at this critical stage of the proceedings may be summarized as follows:

(1) his attorney might have noticed improprieties of which this court is not aware, because the accused, a layman probably frightened by the investigation, may have failed to perceive some improprieties;[11]

(2) had his attorney been present, his cross-examination of the investigators as to the circumstances in which the exemplars were taken, including possible coercion or factors tending to produce inaccuracy, could have been grounded in personal knowledge;

(3) Roberts' attorney, had he been present, could have bolstered Roberts' legal understanding so that he could make an

---

6. U.S.Const. amend. IX.
   The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

7. Gilbert v. California, 388 U.S. 263, 267, 87 S.Ct. 1951, 18 L.Ed.2d 1178, 1183 (1967).

8. In United States v. Wade, 388 U.S. 218, 237, 87 S.Ct. 1926, 18 L.Ed.2d 1149, 1163 (1967), the court grounded its findings of a "critical stage" partly on the fact that counsel had already been appointed so delay would be slight.

9. Gilbert, *supra* n. 7 at 266–267, 87 S.Ct. at 1953, 18 L.Ed.2d at 1182–1183.

10. Alaska Const. art. I, § 9 provides in part:
    No person shall be compelled in any criminal proceeding to be a witness against himself.

11. United States v. Wade, 388 U.S. 218, 230–231, 87 S.Ct. 1926, 18 L.Ed.2d 1149, 1159 (1967). For this reason, denial of counsel at a critical stage may be viewed as per se prejudicial and not requiring any particularized showing of prejudice.

intelligent decision about whether to yield the exemplars at that stage;

(4) counsel might have forced the prosecutor to seek a court order, thereby testing the questions raised under Criminal Rule 26(b) (3) and Alaska Constitution article I, § 9 before yielding the exemplars.

Roberts did not effectively waive his right to counsel. He requested that his lawyer be contacted and yielded the exemplars only when threatened with contempt of court proceedings. We find no evidence of "an intentional relinquishment or abandonment of a known right or privilege." [12]

For these reasons, we have concluded that Roberts was denied his right to counsel under article I, § 11 of the Alaska Constitution. We do not decide whether hand-writing exemplars are within the scope of Alaska Constitution article I, § 9, or whether Criminal Rule 26(b) (3) confers a privilege to refuse to grant them except when ordered to do so by a court. [13] Our decision today clarifies the rights of a criminal defendant to counsel at this critical stage of the proceedings against him. [14]

We are influenced in reaching this conclusion by the dubious ethical character of the government's action in dealing directly with the accused after counsel had been appointed. Any questions of coercion and impropriety could easily have been avoided by obtaining counsel's consent to taking the exemplars. Ordinarily attorneys should not communicate or negotiate with parties represented by counsel. [15] They may not do

12. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 1466 (1938).

13. No rule adopted by this court could limit or restrict the constitutional rights of an accused.

14. Other jurists have condemned *ex parte* communications and contacts with a criminal defendant by the police after indictment. Judge Fuld in People v. Waterman, 9 N.Y.2d 561, 565, 216 N.Y.S.2d 70, 74–75, 175 N.E.2d 445, 447 (1961) said:

> An indictment is the "first pleading on the part of the people" (cites omitted) and, where there has been no preliminary examination, marks the formal commencement of the criminal action against the defendant. Since the finding of the indictment presumably imports that the People have legally sufficient evidence of the defendant's guilt of the crime charged (cites omitted), the necessities of appropriate police investigation "to solve a crime, or even to absolve a suspect" cannot be urged as justification for any subsequent questioning of the defendant.

Mr. Justice Douglas in Spano v. New York, 360 U.S. 315, 325, 79 S.Ct. 1202, 1208, 3 L.Ed.2d 1265, 1273 (1959) said:

> Depriving a person, formally charged with a crime, of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself.

In the same case, Mr. Justice Stewart in his separate opinion at 327, 79 S.Ct. at 1209, 3 L.Ed.2d at 1274, said:

> Under our system of justice an indictment is supposed to be followed by an arraignment and a trial. At every stage in those proceedings the accused has an absolute right to a lawyer's help if the case is one in which a death sentence may be imposed. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 [84 A.L.R. 527]. Indeed the right to the assistance of counsel whom the accused has himself retained is absolute, whatever the offense for which he is on trial.

In Massiah v. United States, 377 U.S. 201, 206, 207, 84 S.Ct. 1199, 1203, 12 L. Ed.2d 246, 250 (1964), Mr. Justice Stewart in his opinion said:

> We hold that the petitioner was denied the basic protections of that guarantee [right to counsel, sixth amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.

15. Canons of Prof. Ethics 9.

> A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel. It is incumbent upon the

through intermediaries what they may not do directly. The district attorney should comply with the ethical standards generally applicable to attorneys. While we do not now hold that the United States and Alaska Constitutions necessarily protect those accused of crime against breaches of professional ethics, this court will not eagerly adopt controversial constitutional interpietations which would encourage unethical behavior.

Although prosecutors and police officers have many functions which are dissimilar, there are also instances where their activities touch and merge in the prosecution of criminal cases. When they are acting in concourse there is no reason why the prosecution should be able to appropriate the fruits of police action which breaches a substantial right of a person charged with a crime, even though the prosecution did not directly participate in that action. After charges have been filed and counsel has been appointed or retained, the case is no longer only a police matter.

Because of the possibility of retrial, it is necessary for us to discuss other issues raised by appellant on this appeal.

Two weeks prior to the commencement of the trial, the prosecuting attorney filed an affidavit which stated:

> That I believe that the State cannot obtain a fair and impartial trial in the above-entitled cause if tried by the Honorable Judge Warren William Taylor.

> That this. affidavit is made in good faith and not for the purpose of delay.

The affidavit was filed pursuant to AS 22.20.022 which provides in part:

> (a) If a party or his attorney in a superior court action, civil or criminal, files an affidavit alleging under oath that he believes that he cannot obtain a fair and impartial trial, the presiding judge shall at once, and without requiring proof, assign the action to another judge of that district, or if there is none, the chief justice of the supreme court shall assign a judge for the hearing or trial of the action. The affidavit shall contain a statement that it is made in good faith and not for the purpose of delay.

> \*     \*     \*     \*     \*     \*

> (c) The affidavit shall be filed within five days after the case is at issue upon a question of fact, or within five days after the issue is assigned to a judge, whichever event occurs later, unless good cause is shown for the failure to file it within that time.

Appellant contends that Judge Taylor was not properly disqualified because the affidavit of disqualification was not filed within five days after the case had been assigned to Judge Taylor. Appellant claims prejudice by reason of the fact that Judge Taylor had previously denied the state's motion for an order requiring appellant to furnish handwriting samples—appellant's argument being that if Judge Taylor had presided at the trial of the case he probably would have refused to permit the admission into evidence of certain handwriting samples that had been obtained from appellant without court order. These samples were admitted by Judge Hepp, who presided at the trial, and appellant contends they contributed in great measure to the jury's guilty verdict. On this basis appellant asks us to reverse the judgment of conviction and order a new trial before Judge Taylor.

██ The essence of appellant's argument is that when a party files a disqualification affidavit under AS 22.20.022, the opposite party has the right to challenge the effectiveness of the disqualification. The statute affords the latter party no such right. The only right created and defined by statute is to have a fair trial before

---

lawyer most particularly to avoid everything that may tend to mislead a party not represented by counsel, and he should not undertake to advise him as to the law.

an unbiased and impartial judge.[16] A party may avail himself of that right by timely filing an affidavit stating that he believes he cannot obtain a fair and impartial trial before a particular judge. The statute does not in any manner purport to give the right to the other party, who does not claim that the assigned judge is biased or prejudiced, to have the case tried by that judge.

It may be contended that if a proper affidavit is not timely filed, then the judge in question is not disqualified under the statute. That is true. And it may be that such a judge may mistakenly believe that he is disqualified when he is not, and for that reason the presiding judge will decide to assign the action for trial before another judge. But a party to the litigation has no right to obtain review of such a decision and to require that the case be heard by the judge whose attempted disqualification was not effective. A party has a right to a trial before an unbiased and impartial judge—not a particular unbiased and impartial judge. For this reason we shall not review and pass upon appellant's contentions that the affidavit of disqualification was not timely filed and that AS 22.20.022 is invalid.[17] We shall pass upon such contentions only at the instance of a party who has sought, and has not obtained, the disqualification of a judge, because then the right to a trial before an unbiased and impartial judge would be directly involved.

In a multi-judge court the assigning of cases to judges for hearing or trial is an administrative matter committed to the discretion of the presiding judge. Ordinarily it is not our function as an appellate court to interfere with the exercise of that discretion. But in an instance where the administrative method of assigning cases affects the effective administration of justice, we are constrained to comment upon this subject.

There is nothing in the record to show when this case was assigned to Judge Taylor for trial, or indeed if such an assignment had ever been made. As appellant points out in his brief, the practice in the Fourth Judicial District is to not make an assignment until the date of trial or hearing. If this is true, then a party who wishes to disqualify a judge under AS 22.20.022 is unable to file his affidavit until the date of the trial or hearing because until then he has no way of knowing which judge will hear the case. The statute requires that at the latest the affidavit of disqualification be filed within five days after an issue has been assigned to a judge. The obvious purpose of this five day requirement is to avoid a waste of judicial time which would result if an affidavit of disqualification were not filed until the day of the trial, because this would mean that the case would have to be continued until another judge could be assigned, and the disqualified judge would probably not be ready at that time to start the trial of another action. A method should be devised and utilized to make assignments of cases to judges sufficiently in advance of trial or hearing, with notice of the assignments being given to the parties, so that the parties can be afforded their rights under AS 22.20.022 without interfering with scheduled hearing or trial dates.

The checks which appellant was charged with having forged were made payable to the order of John Maykut by the McKinley Painting and Decorating Company and were drawn on the Alaska State Bank of Fairbanks. The indictment charged appellant with forging the name of John Maykut as the endorsement to the checks "with intent to injure and defraud the Alaska State Bank of Fairbanks, the McKinley Painting and Decorating Company and

---

16. Channel Flying, Inc. v. Bernhardt, 451 P.2d 570, 576 (Alaska 1969).

17. In certain respects AS 22.20.022 was sustained as a valid exercise of legislative power in Channel Flying, Inc. v. Bernhardt, 451 P.2d 570, 575–576 (Alaska 1969).

John Maykut." At the trial the court instructed the jury as to the necessity of finding specific intent to injure or defraud as required by the forgery statute,[18] by stating that an essential element of the crime of forgery was the "intent to defraud another", that an intent to defraud is an "intent to deceive another person", and that an intent to defraud is shown where the evidence proves beyond a reasonable doubt that a defendant entertained a purpose of such a nature that had it been carried out "someone would or might have been defrauded by his conduct."

■ Appellant contended at the trial and contends here that the jury ought to have been told that in order to convict, it would have to find that appellant had the specific intent to defraud, not just "someone" or "another", but the specific persons named in the indictment.

AS 11.70.010 provides:

Whenever, by a provision of this title, an intent to defraud is necessary to constitute a crime, it is sufficient if an intent appears to defraud any person.

What this statute means, as applied to this case, is that it was unnecessary to specify in the indictment who was defrauded by appellant's actions. However the fact that it was unnecessary to allege in the indictment who was defrauded, does not necessarily relieve the state from the burden of proving the indictment as it was written.

Because of our disposition of the issues above, this case will require a new trial. It is not necessary that we decide whether the variance in this case between the indictment and the instructions constitutes reversible error. For purposes of retrial, we wish to note that it appears to be the prevailing opinion that immaterial, unnecessary allegations in an indictment, which might be omitted without affecting the validity or charge of the indictment, need not be proved and may be properly considered surplusage.[19]

According to one viewpoint, an allegation in an indictment which describes a material element of the offense in unnecessary detail must be proved and cannot be rejected as mere surplusage.[20] The operation of this rule, which dates back to a time when greater emphasis was placed upon formal rules of pleading, does not seem to depend upon a showing that the accused was misled by the indictment nor upon a showing that the accused's right to plead former

---

18. AS 11.25.020 provides:

> A person who, with intent to injure or defraud another (1) makes, alters, forges, or counterfeits a bank bill, promissory note, draft, check, or other evidence of debt issued by a person or by the federal government, the state, a state or territory of the United States, or another state, government, or country, or by a corporation, company, or person authorized by law to issue evidence of debt; or (2) knowingly utters, publishes, passes, or tenders in payment as true and genuine, a false, altered, forged, or counterfeited bill, note, draft, check, or other evidence of debt, or has in his possession that evidence of debt, with intent to utter or pass it as true and genuine, knowing it to be false, altered, forged, or counterfeited, is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

19. Powell v. State, Ind., 237 N.E.2d 95 (1968) (What it is unnecessary to allege, it is automatically unnecessary to prove.) *See* Gambill v. United States, 276 F.2d 180 (6th Cir. 1960); United States v. Steiner Plastics Mfg. Co., 231 F.2d 149 (2d Cir. 1956).

20. Kutler v. United States, 79 F.2d 440, 442 (3d Cir. 1935) ("[A] descriptive averment * * * must be proved as laid * * *."); People v. Deysher, 2 Cal.2d 141, 40 P.2d 259 (1934); Allen v. State, 106 Ga.App. 761, 128 S.E.2d 549 (1962); State v. Johnson, Iowa, 162 N.W.2d 453, 455 (1968); State v. Kimbell, 35 N.M. 101, 290 P. 792 (1930); State v. Sudrala, 79 S.D. 587, 116 N.W.2d 243 (1962); Wilson v. State, 200 Tenn. 309, 292 S.W.2d 188 (1956); Goodwin v. State, 167 Tex.Cr.R. 485, 320 S.W.2d 852 (1959); State v. McGraw, 140 W.Va. 547, 85 S.E.2d 849, 853 (1955).

jeopardy in the event of a subsequent prosecution would be infringed.[21]

■ We believe that an unnecessarily detailed description of a material allegation in an indictment should be treated as analogous to an "imperfection in matter of form" of the indictment within the meaning of Criminal Rule 7(c).[22] The failure to prove (or the failure to submit instructions which require the jury to find) the existence of facts which correspond to an unnecessary description of a necessary element of an indictment will constitute reversible error only if the substantial rights of the accused are prejudiced.[23]

An example of how an unnecessary description in an indictment or information can lead to prejudicial error occurred in State v. Sudrala, 79 S.D. 587, 116 N.W.2d 243 (1962). In that case the information charged a liquor store owner with selling liquor to a minor. Although it was unnecessary to do so, the information named the exact brand of whiskey which was sold to the minor. In establishing a defense at trial, practically the only evidence offered by the defendant was a painstaking explanation of his running daily inventory, involving numerous and detailed exhibits, which if true, established that the defendant's store did not sell the named brand of whiskey to anyone on the day in question. The trial court then submitted the case to the jury on instructions which required the jury to find only that defendant had sold a bottle of liquor rather than the brand named in the information. On appeal it was held that the variance between the information and the instructions was reversible error, because the accused had been misled in the preparation of his defense. The court stated:

> The challenged instruction, in effect, pulled the rug from under a defense which he [the defendant] was induced to present and rely on by the claim of the state made in the information.

116 N.W.2d at 244.

Upon retrial should this issue be raised again, the trial court is instructed to decide this issue in light of the rule we adopt today.

Appellant's final point is that the trial court erred in not granting appellant's motion for a judgment of acquittal as to Count I of the indictment. This count charged appellant with having passed a forged check made by McKinley Painting and Decorating Company with John Maykut as payee.

The check was dated June 6, 1967, and was in the amount of $281.17. Lloyd Adams, a taxi driver, testified that in the early morning of June 19, 1967, he picked up appellant and drove him to the International Hotel Bar. Adams said that he and appellant went into the bar and he watched the bartender, Merrill Wier, cash a check for appellant. Adams did not identify the check, except to say that he thought it was in the amount of either $225 or $250.

21. These factors are the modern criteria for testing the sufficiency of indictments. Stewart v. State, 438 P.2d 387, 390–391 (Alaska 1968) ; Price v. State, 437 P.2d 330 (Alaska 1968) ; Thomas v. State, 391 P.2d 18, 24 (Alaska 1964).

22. Crim.R. 7(c) provides in part:
No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected by reason of a defect or imperfection in matter of form in the indictment, which does not tend to prejudice the substantial rights of the defendant.

23. Because the determinative factor is prejudice under the rule we adopt, we eliminate making the often semantic differentiation between unnecessary description of a necessary element and unnecessary description of an unnecessary element. We note that some courts would hold that the naming of the persons the accused intended to defraud is not a further description of a necessary element, namely the intent to defraud, but is true surplusage and need not be shown. State v. McDermott, 52 Idaho 602, 17 P. 2d 343 (1932) ; State v. Lurch, 12 Or. 104, 6 P. 411, 412 (1885). But see ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1886).

The fact that appellant cashed a check, otherwise not identified, is not alone sufficient evidence to establish that he cashed the check upon which Count I of the indictment was based. But there was other evidence, even excluding the testimony concerning the handwriting samples taken from appellant, from which it could be inferred that appellant cashed and passed that particular check and that the endorsement of the payee, John Maykut, had been forged by appellant. Jack Oliver, a fingerprint examiner for the FBI, testified that he examined the check in question and found appellant's fingerprints on it. Lyndal Schaneyfelt, a document examiner for the FBI, testified that the endorsement on the back of the check was not written by John Maykut. The check bore the handwritten endorsement "John Maykut", and below that were stamped the words, "For deposit only—International Hotel & Bar." Detective Gustafson of the Fairbanks Police Department testified that he received the check from Merrill Wier, bartender and manager of the International Hotel, on June 27, 1967.

This was evidence that the check in question had been cashed or passed at the International Hotel Bar. Since the check bore only the forged endorsement of the payee, John Maykut, and since the check bore the fingerprints of appellant, who had been seen passing a check at the International Hotel Bar shortly before the check in question was turned over to the police, it is a fair inference that the check was cashed at the International Hotel Bar by appellant some time in June 1967. At least fair minded men in the exercise of reasonable judgment could differ on the question of whether appellant's guilt in having passed this forged check had been established beyond a reasonable doubt, and

therefore this issue was properly submitted to the jury and appellant's motion for a judgment of acquittal was properly denied.[24]

The judgment is reversed.

NESBETT, Chief Justice (dissenting).

I agree with the majority's decision except as it holds that the obtention of the handwriting exemplars violated appellant's constitutional right to counsel. With that holding, I dissent.

The majority purports to overrule Knudsen v. City of Anchorage[1] to the extent that it holds that decisions of the Supreme Court of the United States construing provisions of the United States Constitution which are similar to those of the Alaska Constitution are "binding" on this court. The majority states that this holding is made applicable to "past or future" decisions of the United States Supreme Court.

In my opinion the majority has misconstrued *Knudsen*. That decision merely held that decisions of the United States Supreme Court which were of record at the time Alaska's Constitution was created were intended by the Constitutional Convention to be given great weight by Alaska's courts when construing identical provisions in the Alaska Constitution. This holding was based on the report to the Constitutional Convention of the Chairman of the Committee on Preamble and Bill of Rights of the Alaska Constitutional Convention, that in some instances in the Alaska Constitution wording identical to that contained in the United States Constitution was employed, because the particular provision in the United States Constitution "had served its purpose well and was suited to the needs of Alaska."[2]

---

24. Martinez v. State, 423 P.2d 700, 703 (Alaska 1967); Allen v. State, 420 P. 2d 465, 467 (Alaska 1966); Pedersen v. State, 420 P.2d 327, 330 (Alaska 1966); Jennings v. State, 404 P.2d 652, 654 (Alaska 1965); Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

1. 358 P.2d 375, 378–379 (Alaska 1960).

2. 358 P.2d at 378.
   These comments have no application to those provisions of the United States Constitution which have been held to be directly binding on the states by reason of the fourteenth amendment.

Since no past decision of the United States Supreme Court is involved in the case now before us and *Knudsen* did not purport to apply to decisions rendered by that court after the adoption of Alaska's Constitution, the majority's holding must be considered to be dictum.[3]

The majority's preoccupation with *Knudsen* appears to have been intended to lay the foundation for the fact that in its decision it intended to give absolutely no persuasive effect to the recent decision of the United States Supreme Court in Gilbert v. California.[4]

On a set of facts very similar to those before us in the present case the Supreme Court of the United States in *Gilbert* held that the taking of handwriting samples from the defendant after his arrest and while in custody but without counsel, as a suspect of the crime of armed robbery, was not a "critical" stage of the criminal proceedings which entitled the accused to the assistance of counsel. As liberal as the Supreme Court of the United States has been in bestowing constitutional rights on those criminally accused, it was not convinced that any basic right of the accused had been prejudiced under those facts. The majority in the case before us holds that the taking of handwriting samples from appellant, who had been indicted for burglary, had court-appointed counsel, and was in custody, was done at a "critical" stage of the criminal proceedings and violated the accused's constitutional right to counsel under that portion of Section 11, article I of the Alaska Constitution which states:

In all criminal prosecutions, the accused shall have the right * * * to have the assistance of counsel for his defense.

In the present case the accused was asked by the officers to give a handwriting sample; was told that the samples would be submitted to a handwriting expert for comparison tests; was told that he did not have to give a handwriting sample, but that if he refused a court order forcing him to comply could be obtained and that if he then refused to comply with the court order a contempt of court proceeding could result.

Everything the officers told the accused was correct in every respect. Criminal Rule 26(b) (3) states:

An accused in a criminal action has no privilege to refuse, when ordered by the court, to submit his body to examination or to do any act in the presence of the court or the trier of the fact, except to refuse to testify.

No right is conferred on the accused by the above rule. Its purpose was to make it abundantly clear that the accused could not refuse to submit to such examination. The majority has not pointed out wherein the accused has suffered any prejudice. If he had refused to give the handwriting sample a court order could not have been rightfully refused by a court.[5] Failure to obey the order would have been contempt of court.

The majority has reached the astounding conclusion that the rule has conferred some new right on the accused, whereas the only purpose of the rule was to clarify the fact that an accused had no right to refuse to submit to such examination and that if he did refuse he could be forced to submit by a court order. In addition, the majority has misconstrued the rule to confer on accused a constitutional right to an adversary hearing and to be represented by counsel.

---

3. However, and entirely aside from *Knudsen*, this court has always given great weight to analogous decisions of the United States Supreme Court, whether the provisions of the two constitutions were identical or merely similar. In construing our rules this court has specifically stated that federal authorities will be given weight. *See* Brown v. State, 372 P.2d 785, 789 (Alaska 1962).

4. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967).

5. The fact that one trial judge did refuse to order appellant to give additional samples is not before us for review and has no relevance.

By its holding today the majority has created a right in the accused not heretofore accorded by any state or federal court and has made even more difficult and tedious the task of the law enforcement officer in the investigatory stage. Furthermore, on a single set of facts, the majority has taken a mere rule of this court, which had the virtue of flexibility and could have been altered by this court to meet changing conditions, and, as Chief Judge Lumbard has expressed it, "embedded it in the concrete of a constitutional decision of court."

The jury found the appellant guilty of forging signatures to and/or passing three stolen payroll checks based upon the testimony of witnesses who identified the appellant as being the person who cashed the checks with forged signatures, upon the testimony of a handwriting expert, and upon the testimony of a fingerprint expert who testified that appellant's finger and palm prints were found upon some of the checks.

In spite of adequate evidence of guilt, and even though the appellant could have been forced to give handwriting samples by court order if he had not voluntarily done so, the majority holds that:

> we cannot say that this evidence [handwriting] did not appreciably affect the jury's determination of the appellant's guilt. * * * Therefore, the appellant's conviction must be set aside and this case reversed and remanded for a new trial.

The majority explains that one reason for conferring the new constitutional right is that under such circumstances the accused is no match for a skilled investigator. In my opinion the majority would have been better advised to have considered whether, even with skilled investigators, it is not a fact of present day life that the investigator is no match for the overly protected accused. The views of Professor Wigmore seem particularly applicable when he states:

> There seems to be a constant neglect of the pitiful cause of the injured victim, and the solid claims of law and order. All the sentiment is thrown to weight the scales for the criminal—that is, not from the mere accused, who may be assumed innocent, but for the man who upon the record plainly appears to be the offender that the jury have pronounced him to be. We have long since passed the period (as a modern judge has pointed out) 'when it is possible to punish an innocent man; we are now struggling with the problem whether it is any longer possible to punish the guilty' (citing Roper v. Territory, 7 N.Mex. [255] 272, 33 P. 1014 (1893)).[6]

and the comment of Judge Learned Hand:

> Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays and defeats the prosecution of crime.[7]

I would affirm the judgment.

Addendum to Dissent:

In a revision of pages 343–344 of its opinion the majority now attempts to distinguish Gilbert v. California, has decided not to attempt to interpret Criminal Rule 26(b) (3) in relation to article I, Section 9 of the Alaska Constitution, but adheres to its view that this constitutional provision required that counsel be present when the handwriting samples were taken from appellant.

It appears to me that the majority still confuses the taking of handwriting samples with those situations where an accused's privilege against self-incrimination under the Fifth Amendment to the United States Constitution has been violated by compelling him to testify against himself or

6. 1 Wigmore, Evidence, § 21, at 375 (3d ed. 1940).

7. United States v. Garsson, 291 F. 646, 649 (2 Cir. 1923).

*otherwise to provide the state with evidence of a testimonial or communicative nature.* The overwhelming weight of state and federal authority is that the taking of handwriting samples, where the content of the writing is not used to incriminate, is nothing more than one means of identification, to be equated with routine fingerprinting, police line-ups, modeling clothing, submitting to blood tests and other methods of determining physical characteristics.[1]

The majority states that it bases the new constitutional right it has created on the accused's right to counsel at a "critical" stage of the proceedings under the Alaska Constitution. On the other hand, it justifies the right to the presence of counsel during the taking of handwriting samples by the argument that the appellant was prejudiced without counsel because counsel:

(1) *might* have noticed improprieties where the accused, "probably frightened by the investigators", did not;

(2) his attorney could have cross-examined the investigators and apparently prevented possible coercion or inaccuracies;

(3) his attorney "could have bolstered Robert's legal understanding" so that he could decide whether to give the samples;

(4) counsel could require the officers to seek a court order, rather than submit to the requirement that a handwriting sample be given.

All of the above reasons appear to be based principally on the fear that the accused is being required to give evidence against himself rather than to assist in identification. It appears to me that the majority has gone out of its way to presume possible prejudice. For example, is this court justified in *assuming* that an accused *might* be so "frightened" at being required to give a sample of his handwriting that it should create a constitutional right in his favor; is it realistic to *assume* that the cross examination of the officers while they are attempting to obtain a handwriting sample, absent a judge or other arbiter, will prevent coercion or inaccuracy rather than create impossible confusion in what should be a routine proceeding; is it necessary to "bolster" an accused's "legal understanding" before he can intelligently decide to submit to a routine test which the law requires him to take?

Since the taking of a handwriting sample is merely one means of identifying an accused, and since it has now been decreed by this court that the accused has the right to the presence of counsel during this "critical" procedure, then it must follow that under the law of Alaska an accused is now entitled to the presence of counsel during fingerprinting, police line-ups, blood tests and during any other routine identification procedure.

The majority now states that appellant gave up the handwriting samples "only when threatened with contempt of court proceedings." The testimony was that the officers stated that if he did not give the samples he could be ordered to do so by the court, and that if he refused to obey the court order, he could be punished for contempt of court. Appellant admitted, during a hearing held out of the presence of the jury, that one of the officers told him that he did not have to give the sample but that if he did not, a court order would be obtained.

Finally, the majority now states that it was influenced in creating the new right to counsel under the Alaska Constitution "by the dubious ethical character of the government's action in dealing directly with the accused after counsel had been appointed," quoting Canon 9 of the Canons of Professional Ethics. The majority appears to be threatening to create additional constitutional rights in an accused based on the Canons of Professional Ethics. In my

---

1. See: Gilbert v. California, supra; Johnson v. Bennett, 291 F.Supp. 421 (S.D. Iowa 1968); United States v. Izlar, 293 F.Supp. 651 (D.C.1968); United States v. [Doe] Devlin, 405 F.2d 436 (2nd Cir. 1968); Abernathy v. United States, 402 F.2d 582 (8th Cir. 1968).

opinion, the attitude of the majority when it states:

> While we do not *now* hold that the United States and Alaska constitutions necessarily protect those accused of crime against breaches of professional ethics, this court will not eagerly adopt controversial constitutional interpretations which would encourage unethical behaviour. (emphasis supplied)

amounts to outright arrogance.

If the Canons, which were designed only to govern the relationship between *lawyers* and the public, the courts and other lawyers, are to be held binding on the *police,* then it is for the legislature to say so by statute. This court does not have the power to regulate the conduct of the police except indirectly and only to the extent that it may hold that such conduct has violated a constitutional right. As I read it, the majority has not yet transposed any portion of the Canons into the United States or Alaska Constitutions, it only threatens to do so, although it creates ambiguity by stating:

> After charges have been filed and counsel has been appointed or retained, the case is no longer only a police matter.

In my opinion, the majority is acting irresponsibly with relation to constitutional rights. It is, as Professor Wigmore describes it, "playing fast and loose with the constitution" when it attempts to accomplish what it considers to be needful reforms by basing them on constitutional rights. My opinion in this respect is based in part on the number of times the majority has reversed its constitutional field in attempting to find a basis for its holding in this case. This has created the impression that the majority first determined the result it considered desirable and then commenced searching for a suitable constitutional basis, rather than applying sound constitutional interpretations to the facts and abiding by the result.

DIMOND, Justice (dissenting).

The Alaska constitution guarantees to an accused in a criminal case the right "to have the assistance of counsel for his defense." [1] The court construes this provision as requiring the presence of counsel at the time handwriting samples are obtained from the accused. I disagree with this interpretation of the constitution.

I am unable to see why the presence of counsel in this situation is necessary. The writing of one's signature on a piece of paper is a simple, uncomplicated thing. The accused either writes his signature when requested to do so or he does not. I can see no disadvantage to him arising from his lack of knowledge or skill in the law. This is not a case where one is placed at a disadvantage by not having "the full benefit of a trained lawyer's examination into the record, his research of law, his examination and cross-examination of witnesses * * * and his marshalling of arguments on the defendant's behalf." [2]

The court holds that there was prejudice to appellant "from the violation of his right to counsel at this critical stage of the proceedings." It refers to certain "improprieties" which an attorney might have noticed but which appellant, as a layman, may have failed to perceive. I have no idea what the court is referring to—it does not give any inkling of what improprieties it believes might have been involved, or how they may have affected the quality of the handwriting samples given by appellant.

The court mentions as a further prejudicial factor that counsel, had he been present, could have "bolstered Roberts' legal understanding so that he could make an intelligent decision about whether to yield the exemplars at that stage." I do not know what difference it makes whether an accused gives handwriting samples while he is in jail awaiting trial or at some other stage of the proceedings in his case. A handwriting sample given by him is a

---

1. Alaska Const. art. I, § 11.

2. *See* Nichols v. State, 425 P.2d 247, 254 (Alaska 1967).

sample of his handwriting whether given at one stage or another. I cannot see how this could be affected by the absence or presence of a lawyer.

In speaking of prejudice to appellant, the court says that had its attorney been present at the time the handwriting samples were obtained, the attorney's "cross-examination of the investigators as to the circumstances in which the exemplars were taken, including possible coercion or factors tending to produce inaccuracy, could have been grounded in personal knowledge." I do not know how trial counsel, in cross-examining the investigators at the time of trial, could impart to the jury his "personal knowledge" of the circumstances in which the samples were obtained, short of appearing as a witness for his client. And the Canons of Professional Ethics, with which the court is concerned in its opinion, makes it quite clear that such a practice is not favored.[3]

In any event, it appears clear to me that appellant was placed at no disadvantage by reason of his counsel having had no personal knowledge of the circumstances in which the police obtained the handwriting samples from appellant. What these circumstances were is clear. The testimony of both appellant and Lt. Gibson shows that appellant did not want to give the handwriting samples when he was asked to do so, but did so when he was told that if he refused a court order would be obtained, and that if he did not comply with the order

he would be prosecuted for contempt of court.

I can see no case of coercion here. Had appellant refused to give the samples, a court order could have been obtained requiring appellant to furnish the samples under Criminal Rule 26(b) (3).[4] If appellant had still refused in the face of such an order, then he could have been charged with contempt of the authority of the court.[5] What Gibson did then, in prevailing upon appellant to give the samples, was to merely advise appellant of a legal method that would require him to give the samples if he were not willing to do so without resort to a court order. There was nothing unfair or improper in the means used to obtain the handwriting samples from appellant.

Finally, the court believes appellant was prejudiced by the absence of counsel because "counsel might have forced the prosecutor to seek a court order, thereby testing the questions raised under Criminal Rule 26(b) (3) and Alaska Constitution article I, § 9 before yielding the exemplars." These questions could have been as well tested at the trial when the state offered to introduce the handwriting samples in evidence. If a decision on such questions had been favorable to appellant, the samples could not have been used in evidence to prove the state's case. Appellant would have been none the worse off for not having had the questions decided prior to trial. There was no prejudice here.

3. Canons of Prof. Ethics, No. 19, provides:
   *Appearance of Lawyer as Witness for His Client.*
   When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in Court in behalf of his client.

4. Crim.R. 26(b) (3) provides:
   An accused in a criminal action has no privilege to refuse, when ordered by the

court, to submit his body to examination or to do any act in the presence of the court or the trier of fact, except to refuse to testify.

5. AS 09.50.010 provides in part:
   The *following acts or omissions* in respect to a court of justice or court proceedings are contempts of the authority of the court:
   \*    \*    \*    \*    \*
   (5) disobedience of a lawful judgment, order, or process of the court.

In construing the guarantee to the right to counsel in the federal constitution,[6] which is virtually identical to the wording of the Alaska constitution,[7] the United States Supreme Court has held that the taking of handwriting samples was not a critical stage of the criminal proceedings entitling the accused to the assistance of counsel. Noting that there was a minimal risk that the absence of counsel in this situation might derogate from the accused's right to a fair trial, the Supreme Court said:

> If, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for anlaysis and comparison by government and defense handwriting experts. Thus, "the accused has the opportunity for a meaningful confrontation of the [State's] case at trial through the ordinary processes of cross-examination of the [State's] expert [handwriting] witnesses and the presentation of the evidence of his own [handwriting] experts." United States v. Wade, 388 U.S. [218] at 227–228, 87 S.Ct. [1926] at 1932–1933 [18 L.Ed.2d 1149, 1158].[8]

I believe the Supreme Court's reasoning is sound, that we should similarly construe the Alaska constitution's guarantee of the right to counsel, and that we should hold there has been no denial of such constitutional right in this case.

There is one further point I feel constrained to comment on. That is the court's statement that it was influenced in reaching the conclusion that appellant was deprived of his right to the assistance of counsel by "the dubious ethical character of the government's action in dealing directly with the accused after counsel had been appointed." The court appears to hold that under the Canons of Professional Ethics, No. 9, which provides that a lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel, neither the prosecuting attorney nor the police in a criminal case may at any time communicate directly with the accused but must deal solely with his counsel.

That point was not briefed in this case. The court's discussion does not indicate that the question was given the thorough consideration it deserves. The implications are of concern to me. If there may be no communication at all between the accused and law enforcement authorities in the absence of counsel for the accused, the question arises as to whether this may not result in placing an undue burden on law enforcement authorities. It is well for the court to be concerned about protecting the rights of the individual in a criminal case. Indeed, that is its obligation. But the court should also be aware of the rights of society to be protected against the depredations resulting from criminal behavior. I am fearful that the court is being over scrupulous in its concern for what it conceives to be individual rights to the point where the rights of the people to effective law enforcement may suffer. At the least, I believe the court is unwise to lay down such a broad rule relating to communications between law enforcement authorities and an accused in a criminal case, in the absence of a more thorough study of the question.

I would affirm the judgment of conviction.

6. The sixth amendment to the federal constitution provides in part:
   In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.

7. Section 11 of article I, Alaska constitution provides in part:
   In all criminal prosecutions, the accused * * * is entitled * * * to have the assistance of counsel for his defense.

8. Gilbert v. California, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178, 1183 (1967).